KANSAS & A. V. RY. CO. v. DYE et al.

(Circuit Court of Appeals, Eighth Circuit. September 16, 1895.)

No. 558.

1. PRACTICE ON APPEAL—OBJECTION NOT RAISED BELOW.
   Where it clearly appears from a record on appeal that the case was tried in the lower court upon the theory that all the averments of the complaint were put in issue by the answer, and the testimony was introduced and instructions given on that theory, without objection from either side, the plaintiff will not be permitted to question the sufficiency of the denials of the answer in the appellate court.

2. RAILWAY COMPANIES—RULES FOR EMPLOYES—CONTRIBUTORY NEGLIGENCE.
   The rules of the K. Ry. Co. provided, among other things regarding the duties of section foremen, that they should "carefully flag their truck and hand cars against special and extra trains or engines, which may be run at any time," and that "special care must be taken in running hand cars and truck cars on all sections of the road, where, by reason of fogs, sharp curves, or other circumstances, risk or danger is involved," and that hand cars "must always be protected by a flag when a clear track cannot be seen for a safe distance." Q., a section foreman in the employ of the K. Ry. Co., while riding on a hand car, approached a high bridge, at the further end of which was a sharp curve; the track near the curve, which ran on a down grade, being also concealed by timber, and a high wind blowing at the time in the direction which would carry away the sound of a whistle at the curve. Q. did not flag his hand car for a special train, nor take any special care on account of the sharp curve or other dangerous circumstances, except to stop and listen before entering on the bridge. The hand car was struck by a special train, and Q. was killed. *Held*, that the rules above stated were reasonable, and that Q.'s disregard of them constituted such negligence on his part, contributing to the accident, as to bar any recovery against the railway company by his representatives.

In Error to the United States Court in the Indian Territory.

This was an action by Anna J. Dye, Edgar Dye (her husband), Sarah E. Quilliam, Robert Quilliam, David P. Quilliam, Eulie Myrtle Quilliam, and John T. Quilliam (the last four being minors, who sue by their next friend, Sarah E. Quilliam) against the Kansas & Arkansas Valley Railway Company for damages for causing the death of one

William J. Quilliam.    The plaintiffs recovered judgment in the circuit court.    Defendant brings error.    Reversed.

William J. Quilliam was a section foreman on the railroad of the Kansas & Arkansas Valley Railway Company, the plaintiff in error; and, while going to his work on a hand car, he was killed by a collision between the hand car and a freight train.    The defendants in error, who are the widow and heirs of Quilliam, brought this suit against the railway company to recover damages for his death, upon the ground that he was killed through the negligence of the railway company.    The allegations of the complaint upon the subject of the defendant's negligence are as follows: "Said plaintiffs allege that it was the duty of the defendant to use ordinary diligence, care, and skill to provide and maintain a safe place for said section foreman to work, and to regulate the time of the running of its trains;  to notify its servants of any change in the schedules, and of the time of any extra or special trains;  to seasonably blow the whistle when approaching bridges and stations;  to keep a sharp lookout for its servants who are engaged in repairing the track;  to approach bridges and curves with moderate speed;  to manage and conduct its trains and engines in such way as not to expose the life and limbs of its said employés to danger.    But said plaintiffs allege that, in violation of its said duties, the said defendant wholly neglected to use such diligence, care, and skill in each and all the above-named particulars, and wholly failed to perform said duties in any way, except negligently and improperly, and by such negligence caused the death of said William J. Quilliam, in the manner aforesaid."    The answer of the defendant denied negligence on the part of the railway company, and averred that Quilliam's death was caused by his own negligence, and that, if his death was not the result of his own negligence, it resulted from the negligence of his fellow servants.    The controlling facts in the case, about which there is no conflict in the evidence and no controversy, are that about 1 o'clock p. m. on the 6th day of October, 1891, Quilliam as section foreman, with a crew of three men, started from the section house, on a hand car, to go to their place of work.    The four men stood up to work the lever, Quilliam and McKnight in front.    The hand car was going east at a good speed, on a down grade.    The men were faced in the direction the car was going.    There was a strong wind blowing from the west.    The car had to cross a bridge and trestle about 330 feet long and 15 or 20 feet high, a part of which had framework over it.    The approach to this bridge from the east is on a down grade, and at the east end of the bridge the track curves sharply.    At the time of this accident there was timber at the east end of the bridge, within 20 feet of the track, on both sides, and extending along the track for some distance.    The curve in the track, and this timber, prevented one on the west end of the bridge from seeing an approaching train coming from the east until it had come around the curve and was on or near the east end of the bridge; and the engineer on a train going west could not see a hand car on the track, coming east, more than about 20 car lengths.    When about 30 yards from the bridge, Quilliam stopped the hand car to listen for an approaching train, and, not seeing or hearing any train, proceeded on his way with the hand car.    When the car had reached the center of the bridge, the men on it saw a freight train come around the curve at the east end of the bridge, at the distance of about two telegraph poles from the hand car.    At about the same time the engineer on the freight train saw the hand car.    The proper signals were instantly given, and every effort made to stop both the hand car and the freight train, to prevent a collision; but in spite of these efforts the hand car and the train came in collision on the bridge, and Quilliam, who remained on the hand car, trying to stop it, was instantly killed.    The freight train was an extra, drawing 20 cars,—8 loads and 12 empties,—and was running at the rate of 16 miles an hour, on a down grade.    The engineer whistled for the curve at the bridge, one-quarter of a mile from it;  but the whistle was not heard by the men on the hand car, probably on account of the strong wind from the west.    The following rules of the company were in force at the time: "Sec. 38. Duties of Bridge and Track Men.    Rule 1. Bridge foremen and section foremen are required to have

with them at all times, when on duty, a copy of the time cards of the division or district on which they are employed. They must avoid obstructing the free passage of trains or engines with their work in all possible cases. They must at all times carry reliable watches, and daily compare their time with the standard clocks, or with the time of passenger or local freight conductors. Rule 2. Section foremen and bridge foremen must at all times carefully protect their work with proper signals. They must also carefully flag their truck and hand car against special and extra trains or engines, which may be run at any time, day or night, without previous notice to them. They must also comply with all general and special rules that apply to them or their work. Rule 3. Special care must be taken in running hand cars and truck cars on all sections of the road where, by reason of fogs, sharp curves, or other circumstances, risk or danger is involved. These cars must always be protected by a flag, when a clear track cannot be seen for a safe distance." Quilliam, as section foreman in control of the hand car on the day of the accident, did not observe any of the requirements of these rules. The defendant gave Quilliam no notice of the approach of the extra freight train. There was a trial which resulted in a verdict and judgment for the plaintiffs, and the defendant sued out this writ of error.

George E. Dodge and B. S. Johnson filed brief for plaintiff in error.

William M. Cravens, George A. Grace, Thomas S. Osborne, and Thomas Boles filed brief for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The defendants in error contend that the answer does not specifically deny the averment in the complaint that it was the duty of the defendant "to notify its servants of any change in the schedules, and of the time of any extra or special trains," and that, therefore, this averment of the complaint, under the rule of code pleading in force in the Indian Territory, stands admitted. This averment is not specifically denied by the answer. But it is apparent from the record that the case was tried in the lower court upon the assumption that every averment of the complaint imputing negligence to the defendant was properly put in issue by the answer. No contention to the contrary was made in the lower court. It is quite obvious that if the plaintiffs, at the trial, had set up this claim, the defendant would have instantly silenced it by an amendment of its answer. Where it clearly appears from the record that the case was tried in the lower court upon the theory that all the averments of the complaint were put in issue by the answer, and the testimony was introduced and the instructions given on that theory, without objections from either side, the plaintiff will not be permitted to question the sufficiency of the denials of the answer in the appellate court. Parties on appeal must abide by the theories adopted by them in the trial court. They will not be allowed to change their base in the appellate court. The pleadings will be treated on appeal as the parties elected to treat them in the trial court. Elliott, App. Proc. §§ 481, 490, 494; Daniels v. Brodie, 54 Ark. 216, 15 S. W. 467.

At the close of the whole evidence the court was asked to direct the jury to return a verdict for the defendant, and the refusal to grant this request is the first assignment of error. This request sometimes has the effect of raising for the consideration of the ap-

pellate court a pure question of law, rather than any question of fact, and that is its effect in this case. It is obvious that there can be no recovery in this case if the rules of the defendant company relating to the duties of section foremen and the mode of running hand cars are reasonable, and obligatory on the section foremen. These are questions of law, and not of fact. By these rules the section foremen are required to "carefully flag their truck and hand cars against special and extra trains or engines, which may be run at any time, day or night, without previous notice to them." They are further told that "special care must be taken in running hand cars and truck cars on all sections of the road where, by reason of fogs, sharp curves, or other circumstances, risk or danger is involved." And the last requirement of the rule, which is addressed specially to section foremen, and relates to the use of hand cars, is peremptory and absolute, —that "these cars must always be protected by a flag when a clear track cannot be seen for a safe distance." These rules are reasonable. They are founded on the experience and observation of those who have had the management and operation of railroads in this country from their creation down to the present time. They are essential for the protection and safety, not only of the property of the company, but of passengers, and of the employés of the company,—more especially of section foremen and their men, whose duties require of them the use of hand cars. They are designed, also, to prevent delay and obstruction in the running of trains, and at the same time secure the utmost safety to the sectionmen, compatible with their employment. The usual and necessary risks and dangers incident to their employment, they assume. On the question of the risks assumed by sectionmen and other laborers, the supreme court of the United States, in a late case, reversing a judgment rendered on the circuit by the writer of this opinion, say:

"As a laborer upon a railroad track, either in switching trains or repairing the track, is constantly exposed to the danger of passing trains, and bound to look out for them, any negligence in the management of such trains is a risk which may or should be contemplated by him in entering upon the service of the company." Railroad Co. v. Hambly, 154 U. S. 349, 357, 14 Sup. Ct. 983.

These rules are not incapable of observance; and obedience to them imposes no unnecessary hardship or burden on section foremen or their men, while it protects them from injury. The time of the men, required to comply with these rules, is the company's. No loss of wages ensues, no matter how much time is taken up in the observance of the rules. It is no loss or hardship, therefore, to the sectionmen, to require them to obey rules made, in a great measure, for their own protection. So necessary and reasonable are these rules that it would be negligence in law for a railroad company to operate its trains without adopting them, or rules of similar import. We do not think these rules tend to impair the safety of employés, as counsel for the defendants in error contends. Unquestionably, if they did, they would be void, and their adoption by the company an act of criminal negligence. Quilliam did not, on the occasion of this accident, comply with these rules. He did not flag his hand car "against

special and extra trains," as the rule required him to do. "Sharp curves and other circumstances" made the running of the hand car at the point where the accident occurred extremely dangerous, and no "special care" or precaution was taken to avert the danger, other than to stop the hand car and listen for a coming train. The sharp curve in the track at the east end of the bridge, and the timber on either side of the track, made it impossible to see an approaching train for a safe distance, and the rule is explicit that "these cars [hand cars] must always be protected by a flag when a clear track cannot be seen for a safe distance." The conditions existing at the time and place of the accident, all of which were known to the men on the hand car, called for the exercise of the greatest caution, and the strictest observance of the rules applicable to dangerous conditions. The situation was rendered extrahazardous by the existence of the following, among other conditions: There was a long, high bridge and trestle to be crossed by the hand car. There was a sharp curve at the end of the bridge, which, with the timber on either side of the track, effectually obscured the view of a coming train before it reached the east end of the bridge. A coming train would be running on a down grade as it approached the bridge, and the whistle and noise of a coming train would be wafted away from the men on the hand car by the stiff wind blowing in the opposite direction to that in which the train was coming. It would be difficult to conceive of the presence of conditions demanding a stricter observance of rules, and the exercise of greater caution. It was a place that required of the men on the hand car the use of every reasonable safeguard against such accidents as that which occurred. There is no pretense that the requirements of the rules were observed by the section foreman in charge of the hand car. It is indisputable that their nonobservance contributed to, if it did not occasion, the accident; and, even if the defendant was guilty of negligence,—a question upon which it is not necessary we should express an opinion,—the section foreman was clearly guilty of contributory negligence, which precludes a recovery in this case, and the court below should have so told the jury. Olson v. Railway Co., 38 Minn. 117, 35 N. W. 866; Railroad Co. v. Reesman, 19 U. S. App. 596, 9 C. C. A. 20, and 60 Fed. 370; Beech, Contrib. Neg. § 141.

The conclusion reached on the first assignment of error renders it unnecessary to consider any of the others. The judgment of the United States court in the Indian Territory is reversed, and the case remanded for a new trial.