MUTUAL FILM CORP. v. MORRIS & DANIEL. (No. 8303.)*

(Court of Civil Appeals of Texas. Ft. Worth. Jan. 15, 1916. On Motion for Rehearing, Feb. 26, 1916.)

1. CONTRACTS ☞10(4) — UNILATERAL CONTRACT.

The contract is unilateral, and so terminable at the will of either party, where, though defendant agreed to furnish films so long as plaintiffs continued in business, plaintiffs did not agree to take them for such, or any, definite period.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 37; Dec. Dig. ☞10(4).]

On Motion for Rehearing.

2. STATUTES ☞276(1)—REPEAL—EFFECT.

Act March 3, 1913 (Acts 33d. Leg. c. 127) § 4, amending Rev. St. 1911, art. 1902 (Vernon's Sayles' Ann. Civ. St. 1914, art. 1902), to provide that a fact alleged in the petition, not being denied by the answer, shall be taken as confessed, being remedial, is not available on appeal, where repealed after the trial.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 371; Dec. Dig. ☞276(1).]

---

**3. PLEADING ⬤═412—MATTERS OF COMPLAINT NOT DENIED—REQUEST TO COURT.**

That plaintiffs may avail of Act March 3, 1913, § 4, amending Rev. St. 1911, art. 1902, to provide that a fact alleged in the petition, not being denied by the answer, shall be taken as confessed, the court's attention must be called to the fact, and request be made that the allegation be taken as confessed.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1387–1394; Dec. Dig. ⬤═412.]

**4. CONTRACTS ⬤═28(3) — UNILATERAL CONTRACT—EVIDENCE.**

Evidence, in an action for breach of defendant's agreement to furnish films to plaintiffs so long as they remained in business, *held* to fail to show that plaintiffs agreed to take and pay for them for such period, so as to prevent the contract being unilateral.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 133–140, 1820, 1821; Dec. Dig. ⬤═28(3).]

**5. APPEAL AND ERROR ⬤═1175(5)—REVERSAL —RENDERING OR REMANDING.**

Where though the necessity of proof by plaintiffs of the material allegation of the complaint, of agreement on their part, could not well have escaped their attention, and they offered the testimony of the only persons by whom it seems the necessary proof could be made, and they testified, apparently, fully, without making the proof, and plaintiffs in their motion for rehearing set forth no fact or circumstance tending to show that full opportunity was not afforded for a full development of the case, the provision of Vernon's Sayles' Ann. Civ. St. 1914, art. 1626, that, when judgment is reversed, the court shall render such judgment as the court below should have rendered, and not the exception, that when it is necessary that some matter of fact be ascertained, the cause shall be remanded for a new trial, is applicable.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4579; Dec. Dig. ⬤═1175(5).]

**6. APPEAL AND ERROR ⬤═768 — BRIEFS — STATEMENT—FAILURE TO CONTEST.**

By express provision of Court of Civil Appeals rule 41 (142 S. W. xiv), whatever of the statements in appellant's brief is not contested will be considered as acquiesced in.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3103; Dec. Dig. ⬤═768.]

Appeal from District Court, Taylor County; Thomas L. Blanton, Judge.

Action by Morris & Daniel against the Mutual Film Corporation. Judgment for plaintiffs, and defendant appeals. Reversed and rendered.

Smith, Robertson & Robertson, of Dallas, for appellant. Eugene De Bogory, of Abilene and W. L. Morris, of Albany, for appellees.

CONNER, C. J. This appeal is from a judgment for $1,750 in appellees' favor as damages for breach of an alleged contract made with the appellant corporation.

[1] Pretermitting as immaterial a discussion of a number of assignments presented, we go at once to the vital question in the case. The appellees alleged that they were engaged in exhibiting moving picture films in the city of Abilene; that upon the date stated the appellant corporation agreed to furnish appellees with moving picture films delivered in Abilene weekly at a rental of $28.-

50 per week, "so long as the plaintiffs continued in the picture show business in Abilene." It was alleged that the appellees agreed to take and use the films at the price and upon the terms stated "as long as the plaintiffs continued in the picture show business in Abilene." The evidence possibly supports the finding of the jury to the effect that the appellant corporation agreed to furnish films as alleged, but, as presented, we find the evidence wholly wanting to support the allegation of an agreement on appellees' part to take the films at the price and for the period specified. The contract, therefore, is so plainly unilateral, and terminable at the will of either party that it seems only necessary to cite some of the authorities. See H. & T. C. Ry. Co. v. Mitchell, 38 Tex. 86; Kraft Holmes & Co. v. Sims, 1 White & W. Civ. Cas. Ct. App. § 404; Richardson v. Hardwicke, 106 U. S. 252, 1 Sup. Ct. 213, 27 L. Ed. 145; Dorsey v. Packwood, 12 How (U. S.) 126, 13 L. Ed. 921; Oil & Pipe Line Co. v. Teel, 95 Tex. 591, 68 S. W. 979; Tyler Ice Co. v. Coupland, 44 Tex. Civ. App. 383, 99 S. W. 133; Campbell v. Lambert, 36 La. Ann. 35, 51 Am. Rep. 1; E. L. & R. R. R. R. Co. v. Scott, 72 Tex. 70, 10 S. W. 99, 13 Am. St. Rep. 758; A. Santaella & Co. v. Otto F. Lange Co., 155 Fed. 719, 84 C. C. A. 145; American Cotton Oil Co. v. Kirk, 68 Fed. 791, 15 C. C. A. 540; Fowler Utilities Co. v. Gray, 167 Ind. 1, 79 N. E. 897, 7 L. R. A. (N. S.) 726, 120 Am. St. Rep. 344; Bradshaw v. Terrell Foundry & Mach. Co., 104 S. W. 509.

The contract, under the circumstances proven being terminable at the will of either party, was unenforceable, and appellant's failure to continue furnishing films, as charged in the appellees' petition, furnishes no legal ground for redress. We, accordingly, sustain appellant's assignments attacking the action of the court in submitting the issue, the verdict of the jury thereon, and the judgment in appellees' favor.

The conclusions so announced require of us a reversal of the judgment and a rendition of the judgment in appellant's favor, and it is accordingly so ordered.

### On Motion for Rehearing.

[2, 3] Appellees urgently insist that we erred in reversing the judgment herein because of a want of evidence, for the reason that in appellant's answer there was no special denial of plaintiffs' allegation that appellees "agreed" to take and use the films, which were the subject-matter of the controversy, "at the price and upon the terms stated as long as the plaintiffs continue in the picture show business in Abilene." And they cite section 4 of the act of the Thirty-Third Legislature, approved March 3, 1913, amending article 1902 of the Revised Statutes. (Vernon's Sayles' Ann. Civ. St. 1914, art. 1902). The amended article reads, in part:

---

⬤═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"The defendant in his answer shall plead to each fact alleged in the plaintiff's petition, and either admit or deny the same, or deny that he has any knowledge or information thereof sufficient to form a belief. And any fact not denied by the defendant or which he does not deny that he has any knowledge or information thereof sufficient to form a belief shall be taken as confessed," etc.

It is true that in the defendant's answer there was no specific denial of the allegation quoted. But since the trial below the act quoted has been repealed by act approved March 22, 1915. See General Laws 1915, p. 155. The statute above quoted, being remedial in its nature, is, in consequence of the repeal, therefore no longer available even in this court. See Etter v. Missouri Pac. Ry. Co., 2 Willson, Civ. Cas. Ct. App. § 60, and authorities therein cited. See, also, 36 Cyc. p. 1228, § G. Moreover, it has been the holding of this court, as well as of other courts, that in order to entitle a party to avail himself of the right conferred by section 4 of the act of 1913, because of a want of a verified denial of a material allegation, it is necessary that the court's attention be called to the fact, and request be made that the allegation be taken as "confessed," as provided in the section quoted. Ashcroft v. Stephens, 16 Tex. Civ. App. 341, 40 S. W. 1036; Railroad Co. v. Dye, 70 Fed. 24, 16 C. C. A. 604; T. & P. Ry. Co. v. Tomlinson, 169 S. W. 217. The record fails to show that appellees excepted to any part of appellant's answer for a want of verification, or that request was made of the trial court that any part of the appellees' petition be taken as confessed. We are of the opinion, therefore, that appellees' first ground of error in the motion for rehearing must be overruled.

[4-6] It is further insisted that we erred in rendering the judgment rather than in reversing the cause for another trial. Appellees, in support of this ground of the motion, invoke article 1626 of Vernon's Sayles' Texas Civil Statutes, which reads that:

"When the judgment or decree of the court below shall be reversed, the court shall proceed to render such judgment or decree as the court below should have rendered, except when it is necessary that some matter of fact be ascertained, or the damages to be assessed or the matter to be decreed is uncertain, in either of which cases the cause shall be remanded for a new trial in the court below."

We were not unmindful of this provision of our statutes in announcing our original conclusion. But the record shows that the trial proceeded upon the appellees' fourth amended original petition, their first supplemental petition, and a trial amendment, and upon defendant's first amended original answer and its first and second supplemental answers. And the necessity on appellees' part to, among other things, prove the very material allegation that they had agreed to take and pay for the films promised by the appellant corporation could not very well have escaped the attention of the parties and of the court, as it seems to us. Upon this point it further appears that the appellees offered the following testimony, and none other that materially affects the issue, viz.:

Charlie Morris, one of the appellees, after having testified that the appellees had leased the film business in Abilene in October, 1913, and after having testified that he had communicated with Charles Touchon of the appellant film company, requesting a continuance of the service by shipping films to the appellees, to which Touchon consented, and after having further testified that there was "not anything said over the telephone then about how long we were to get the service; there was no agreement over the telephone about how long we were to get the service," further testified:

"I did not talk with the Mutual people any more until in January, 1914, in regard to a contract. I then talked with Touchon, at the Mutual Film Exchange in Dallas. When I was in Dallas in January, I told Touchon that I had heard that there was a party in Abilene trying to get our service, and that is what I came to Dallas for, and to see about service for a new theater we had opened here. 'Well,' he says, 'there is nobody trying to get your service, Morris,' and he says, 'They could not get it if they wanted it.' He says: 'Our business relations have been very pleasant, and we don't do that kind of business. We don't take service away from a man as long as he pays for it.' I asked him about service for the Gem Theater, and he did not know where I could get service. I asked him about the Universal service. He said it was no good. We then had a conversation in the back part or the center part of the building in regard to some features we were looking over—some new advertising matter; big post cards and big photographs—and I booked some features with him. By 'booking' I mean contracting for it. A feature film is a special film on any special feature that is not in the regular service. It is called a feature, that might be from one to ten reels. That is a special, booking a feature is contracting for it; that is, contracting to run a feature separate from the regular program on a certain day or a certain price. We were going to run this at the Jewel Theater in Abilene. Touchon patted me on the back, and says, 'You go back to Abilene and boost your business and rest easy.' He says, 'There is nobody going to get your service.' Nothing else specially was said. He said he would continue shipping to Abilene just like he always had at the same price, and wanted to know if I wanted any new machine or anything for the new theater. He tried to sell me a motograph picture machine for the Gem Theater. At that time, the Gem Theater was located in Abilene. The theater that we were running at that time was located at Abilene in the Jewel Theater building. We had the Airdome then. * * * I don't know how long I was in the office, 30 or 40 minutes. I was back there that day, and back there the next day. We were talking most of the time. That is all that I can recall that was said. We were not using any other films, at that time, than the Mutual Film. I don't recall anything else that was said specially, except that Mr. Touchon told me there was nobody trying to get the service, and could not get it if they wanted it; that we could have it just as long as we paid for it, and as long as we was in the show business in Abilene. * * * There had not been any interruption in the service of the Mutual Film Company from the beginning, and after the conversation with Mr. Touchon that I have testified about up to May 15, 1914, the time asked about. We got films

every day except Sunday. We didn't get films on Sunday. We got a regular program of three films a day. I received the telegram which you now show me. This telegram is directed to 'Morris and Daniel, Abilene, Texas, Jewel Theater.' And reads as follows: 'Please make other arrangements for service after Saturday May sixteenth. Mutual Film Corp. of Texas. 9:27 P. M.' * * * There is another part of the conversation that I did not recall this morning, in regard to keeping the service in the Jewel Theater. Mr. Touchon said that there could not anybody get our program, and that we were to have it exclusively; that no other show in town could get it, and that we could have it as long as we paid for it, and as long as we was in the show business in Abilene, and that he would continue to deliver films to Abilene just like he had been in the past. * * * "

L. E. Keys testified:

"My name is L. E. Keys. I live in Abilene. At one time, I lived in Dallas. While I lived in Dallas, I met Charlie Morris there at one time. I met Charlie at the Interurban Station, and we went over to some film exchange. At the film exchange, I saw this gentleman that was sitting right over there a while ago, with the light hair. I heard a conversation between he and Charlie. I don't know that I can explain just every word that was said between them, but it was something in reference to the films that they were using. Charlie says, 'I heard that you was going to take them away from me,' or something that way. He says, 'Oh, well, there is nothing to it that I know of, as long as you pay for them; everything has been satisfactory so far.' He said there was nothing to what Charlie had heard. Well, they went on and talked about something else—I don't know what all they did say—and then they got up and went in the back end of the building—of the office."

On cross-examination he testified:

"As to how it happened that I went over to the film place with Charlie Morris, I was going down the street and met Charlie there. * * * I could not say what the name of that Film Exchange was. * * * I saw Touchon there. He is the man that was sitting there. * * * No one else was with Morris at that time. I went inside of the place; that is, on the inside of the exchange. When I first saw Touchon, he was at his desk there inside of a railing. I did not have any conversation with Touchon. Morris just introduced me to him, and he asked me if I was in the moving picture business, and I told him no, and I think that is all the words we said. As to how long a time Morris was talking to Touchon, I suppose we stayed there maybe 20 or 30 minutes; something like that. We were inside the railing, both of us. * * * I might have heard all of the conversation, but I was not interested in it, and I don't know anything about it. I did not pay any particular attention to it; nothing more than I would, just being in conversation anywhere with any one else. * * * They talked there where I was something like 20 minutes, and then they got up and went in the back end of the building. I never went back there with them at all, I stayed there until he came back, and when he came back, I got up and went on off with him. * * * The portion of the conversation that I remember when we went in there was that Morris introduced me to this man, and Morris says, 'I heard something about you going to let somebody else have my business' or something in regard to that. * * * He told Morris that he had not heard anything about it, and he asked Morris if that is what he came to Dallas for, or something that way. Morris had put up another show, and Morris asked him about getting films for the other show. Morris asked him where to get them, and he told Morris he did not know where Morris could get service. Morris asked him something about features. Now, I don't know what there is about that. I don't know what the features are, and when they went in the back end of the house, I never heard any more of the conversation. He told Morris that as long as he paid for them, and paid him what he owed him, he did not see why he should change, or something in regard to that. That is what Mr. Touchon said."

Touchon, while testifying, denied that any agreement was made, but, regardless of this denial, we think the conclusion is inevitable that the evidence quoted fails to show that appellees "agreed" to take and pay for the films as they alleged. In addition to this, the want of this proof was specifically pointed out on the original hearing under appellant's second assignment of error, excepting to the refusal of the court to give a peremptory instruction as requested, where, among other things, it was stated in appellant's brief that:

"There was no evidence that the plaintiffs agreed to use defendant's films in their picture show at Abilene as long as they remained in the picture show business in Abilene."

Appellees made no answer to this assignment, and made no denial of the statement so made in appellant's brief. And rule 41 (142 S. W. xiv), promulgated for the government of this court, expressly declares that:

"Whatever of the statements of the appellant or plaintiff in error in his brief is not contested will be considered as acquiesced in."

In the foregoing condition of the record before us, we fail to see any necessity for remanding the cause in order "that some matter of fact be ascertained." Appellees offered the testimony of the only persons by whom it seems the necessary proof could be made. These parties testified, apparently, fully, upon the trial, and appellees in their motion for rehearing set forth no fact or circumstance which tends to show that full opportunity was not afforded by the trial court for a full development of the case. It is apparent that other contingencies mentioned in article 1626 have no application to the present case.

We, accordingly, adhere to our original conclusions and overrule the motion for rehearing.