**INGRAM FREEZERS, Appellant,**

**v.**

**ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, Appellee.**

**No. 17538.**

Court of Civil Appeals of Texas, Dallas.

Feb. 12, 1971.

Rehearing Denied March 5, 1971.

---

3. The attorney who drafted the second will testified that the first will made such a provision.

Royal H. Brin, Jr., Strasburger, Price, Kelton, Martin & Unis, Dallas, for appellant.

John F. Green, Jr., Hudson, Keltner, Smith & Cunningham, Fort Worth, for appellee.

BATEMAN, Justice.

This is a suit for damages for breach of contract. The plaintiffs were the appellant, Ingram Freezers, a partnership, and Prop, Inc. They alleged Prop, Inc. to be the owner, and Ingram Freezers the lessee, of the Third Unit of the Santa Fe Building in Dallas. They alleged that the defendant-appellee breached a contract to continue to furnish rail service to that building as long as the plaintiffs desired it. The case was tried before a jury, but when the plaintiffs rested the trial court granted appellee's motion for instructed verdict, withdrew the cause from the jury and rendered judgment for appellee. Both plaintiffs attempted to appeal, but the appeal bond of Prop, Inc. was not timely filed and upon motion its appeal was dismissed by this court. Ingram Freezers, however, perfected its appeal. Its first two points of error on appeal complain rather broadly of the instructed verdict.

In determining whether it was proper for the court to instruct the verdict, we must view the evidence in the light most favorable to appellant and indulge against the instruction every inference that may

properly be drawn from the evidence and reverse the judgment if the record reflects any testimony of probative force in favor of appellant. Hughes v. J. Weingarten, Inc., 398 S.W.2d 440 (Tex.Civ.App., Beaumont 1965, writ ref'd n.r.e.). In reviewing the evidence we may not pass on the credibility of witnesses or the weight of their testimony, and if there is testimony of probative force in favor of appellant and against the instructed verdict, we may not affirm even though a judgment based upon such evidence would be against the overwhelming weight and preponderance of the evidence. Locke v. Thigpen, 353 S.W.2d 249 (Tex.Civ.App., Houston 1961, reversed on other grounds 363 S.W.2d 247).

*Facts*

It was stipulated that appellee Atchison, Topeka & Santa Fe Railway Company received all the assets of Gulf, Colorado & Santa Fe Railway Company and assumed all of its duties, liabilities and obligations as of August 1, 1965. They will be called herein "Santa Fe" as referring to either company. Appellant introduced in evidence numerous documents, but says in its brief that the principal instruments giving rise to the alleged contract for rail service are the deed from Santa Fe to the Dallas, Texas Corporation dated September 14, 1962, and a certain "clarification" agreement between them dated October 4, 1962. However, before reciting the pertinent parts of those instruments we think it would be well to give some of the background of ownership of these properties. Terminal Building Corporation of Texas formerly owned the Second, Third and Fourth Units of the Santa Fe Building, being three separate buildings situated north of Young Street. The one primarily involved in this suit is the Third Unit. An underground railroad track had been constructed under the buildings to provide a means of rail service to and from them. Santa Fe was the owner of the easement to use for track purposes the entire space under the said buildings, together with "the sole and exclusive use of all tracks serving the proposed buildings, whether constructed on, above or below the surface of the ground," having excepted and reserved these rights when it conveyed the property in 1923 to Terminal Building Corporation. These tracks ran in a southerly direction from the three buildings to Young Street, passing under Young Street and then surfacing and being connected with a railroad spur track on the surface of the land south of the buildings, which spur track and the land upon which it was located were also owned by Santa Fe. That company also owned certain other land, buildings and railroad tracks lying south of Young Street and west of the spur track, all of which was known as Santa Fe's Young Street Freight Terminal.

By the deed dated September 14, 1962, Terminal Building Corporation conveyed the Second, Third and Fourth Units of the Santa Fe Building and the land on which they were situated to Dallas, Texas Corporation, but in this deed the grantor expressly excepted and reserved the same exclusive rights and easements which had been reserved by Santa Fe in its 1923 deed to Terminal Building Corporation. By deed also dated September 14, 1962, Santa Fe conveyed to Dallas, Texas Corporation the same exclusive rights and easements, but subject to the following reservation:

"It is expressly understood and agreed that GULF, COLORADO AND SANTA FE RAILWAY COMPANY, Grantor herein, reserves the sole and exclusive right of serving by rail from the said railroad tracks in said railway tunnel structure hereinabove referred to, or from any extension thereof or connection therewith, patrons who might desire railroad freight service and are located in those certain three multistory brick buildings commonly known as Santa Fe Units Nos. 2, 3 and 4 under which said railroad tracks now are located, or such patrons located upon any portion of the property which constitutes the real estate upon which said buildings are now located, together with the sole and exclusive

right of serving such patrons located on or in any other property of Grantee herein to which said railroad track extension or connection might be constructed. Grantor herein expressly agrees to maintain the railroad track structure which is hereby conveyed to Grantee herein. Provided, however, that in the event that rail services are no longer necessary, the said Grantee herein may remove said railroad tracks, the railway tunnel structure, and appurtenances thereto. If, at any time after such removal, if such is done, rail service is again needed to serve said patrons described above, then, in such event, the Grantee herein, by acceptance of this deed, agrees that said Gulf, Colorado and Santa Fe Railway Company shall have the sole and exclusive right of serving such patrons above described."

The instrument dated October 4, 1962, after reciting the giving of the deed dated September 14, 1962 and the desire of the parties to clarify "the right and reservation of said Railway Company to have the sole and exclusive right of serving by rail from the railway tracks conveyed by said deed, or any extension thereof or connected therewith, patrons who might desire railroad freight service," then provided:

"NOW THEREFORE, the parties hereto mutually agree as follows:

(1) It is understood and agreed that DALLAS, TEXAS CORPORATION, its successors and assigns, shall have the sole prerogative and decision as to whether such rail services are to be continued or whether the same are necessary.

(2) In the event rail service is discontinued, if at some future time DALLAS, TEXAS CORPORATION, its successors or assigns, shall determine to again install rail service, GULF, COLORADO AND SANTA FE RAILWAY COMPANY shall have the sole and exclusive right of serving by rail from said railway tracks as the same are recon-structed, or any extension thereof or connection therewith, patrons who might desire rail freight service from or on said tracks."

By deed dated September 21, 1962, the Dallas, Texas Corporation conveyed all three buildings to Ingram Brothers, a limited partnership. This deed also excepted and reserved the same exclusive rights and easements which had been reserved in the 1923 deed from Santa Fe to Terminal Building Corporation, but accorded Ingram Brothers, their successors and assigns, the right of ingress and egress to the tunnel and the exclusive right to use a certain portion of it. Ingram Brothers then commenced operating a refrigerated warehouse in the Third Unit and conveyed the other two units to other parties not involved herein. Rail service to and from the said Third Unit was provided by Santa Fe.

By deed dated August 26, 1965, Ingram Brothers conveyed the Third Unit to J. L. Williams, B. Joseph Chafin and James B. Hadsell, and a new partnership known as Ingram Freezers (appellant herein) was formed for the purpose of leasing the Third Unit and operating the refrigerated warehouse therein. A lease dated August 31, 1965 was signed by Williams, Chafin and Hadsell, the then owners of the Third Unit, leasing it to appellant for a term of ten years.

Thereafter, by deed dated December 30, 1966, Williams, Chafin and Hadsell conveyed the Third Unit to Cannon Craft Distributing Company, which subsequently conveyed it to the said Prop, Inc. by deed dated September 23, 1968.

By contract dated June 25, 1968, Santa Fe agreed to convey to a group not parties hereto and spoken of as the "Griffin group" all of Santa Fe's property situated south of Young Street. However, Santa Fe continued in ownership and possession of this property and continued to furnish rail service to appellant at the Third Unit until such service was discontinued the next year, as will hereinafter appear.

On October 18, 1968, the City of Dallas wrote a letter to appellee notifying it that the City would need to acquire, by around July 1, 1969, a part of Santa Fe's property south of Young Street, including part of the property on which Santa Fe's spur track was located, for use in enlarging and constructing facilities for the City's municipal auditorium located just east of Santa Fe's property. The City threatened that unless the property could be purchased it would be taken by condemnation. Late in 1968, and again in April 1969, Santa Fe notified appellant that it intended to terminate the rail service on July 1, 1969, indicating that the exact date depended to a large extent on the City. Santa Fe continued to furnish the rail service until July 7, 1969, the date on which the City by condemnation took a part of its property and the spur track. On February 2, 1970, Santa Fe conveyed to the "Griffin group" the remaining portion of its property south of Young Street which had not been taken by the City through condemnation.

## OPINION

 Nowhere in either the deed of September 14, 1962 or the clarification agreement of October 4, 1962, or elsewhere in the record before us, do we find any express agreement on the part of Santa Fe to furnish any rail service to the property in question. These instruments expressly give Santa Fe the exclusive *right* to do so, but they are devoid of any language expressly *obligating* it to do so.

The two instruments should be construed together, as they obviously form separate parts of one agreement. 13 Tex.Jur.2d, Contracts, § 117, p. 278. So construed, they merely provide that Santa Fe shall have the "sole and exclusive right" of providing the rail service, and that Dallas, Texas Corporation, its successors and assigns, shall have the "sole prerogative and decision as to whether such rail services are to be continued or whether the same

are necessary." Santa Fe is thus given the option to furnish rail service if any is to be furnished, and Dallas, Texas Corporation is given the option to determine whether any such rail service is to be furnished.

Therefore, if these instruments impose any obligation on appellee to furnish rail service, it can only be by implication. The rule under which appellant must bring its case, to show a contract by implication from the language actually used by the parties, is thus clearly stated by the Supreme Court in Danciger Oil & Refining Co. of Texas v. Powell, 137 Tex. 484, 154 S.W.2d 632, 635, 137 A.L.R. 408 (1941), and quoted with approval in Palm v. Mortgage Investment Co. of El Paso, 229 S.W. 2d 869, 873 (Tex.Civ.App., El Paso 1950, no writ) :

"In the outset it should be noted that when parties reduce their agreements to writing, the written instrument is presumed to embody their entire contract, and the court should not read into the instrument additional provisions unless this be necessary in order to effectuate the intention of the parties as disclosed by the contract as a whole. An implied covenant must rest entirely on the presumed intention of the parties as gathered from the terms as actually expressed in the written instrument itself, and it must appear that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it, and therefore omitted to do so, or it must appear that it is necessary to infer such a covenant in order to effectuate the full purpose of the contract as a whole as gathered from the written instrument. It is not enough to say that an implied covenant is necessary in order to make the contract fair, or that without such a covenant it would be improvident or unwise, or that the contract would operate unjustly. It must arise from the presumed intention of the parties as gathered from the instrument

as a whole. 21 C.J.S. Covenants, § 9, p. 888; 13 C.J. 558; 17A C.J.S. Contracts § 328; 15 C.J. 1214; 21 C.J.S. Covenants § 14; 14 Amer.Jur. 490; Freeport Sulphur Co. v. American Sulphur Royalty Co., 117 Tex. 439, 6 S.W.2d 1039, 60 A.L.R. 890; Grass v. Big Creek Development Co., 75 W.Va. 719, 84 S.E. 750, L.R.A. 1915E, 1057. However, covenants will be implied in fact when necessary to give effect to the actual intention of the parties as reflected by the contract or conveyance as construed in its entirety in the light of the circumstances under which it was made and the purposes sought to be accomplished thereby."

As stated in Stalcup v. Eastham, 330 S. W.2d 237, 240 (Tex.Civ.App., El Paso 1959, writ ref'd n.r.e.) :

"Courts cannot make contracts for parties, and can declare implied covenants to exist only where it appears that such covenants were clearly contemplated by the parties or are necesary to effect purposes of contract. Hillburn v. Herrin Transp. Co., Tex.Civ.App., 197 S.W.2d 149."

Appellant argues that the provision in the above quoted excerpt from the September 14, 1962 deed from Santa Fe to the Dallas, Texas Corporation, obligating Santa Fe to "maintain the railroad track structure which is hereby conveyed to Grantee herein," carries with it by necessary implication a covenant to provide rail service thereon; that it would be vain and useless to maintain the track structure unless rail service were to be provided, and no one else could supply such service since Santa Fe had the sole and exclusive right to do so. This is in our opinion a *non sequitur*. Of course, it was contemplated that Santa Fe would provide rail service using the track structure which it had installed, and so long as it did so it was not unreasonable for it to be bound to keep the tracks in repair; but this consideration has no bearing on the question of whether Santa Fe was bound to provide such service forever, or so long as appellant or its landlord (or possibly some future tenant or sub-tenant yet unborn) might desire it.

We cannot, in the light of the above authorities, sustain appellant's view that such an implied contract existed. We are in effect asked to write into the agreement an obligation which the parties themselves did not see fit to incorporate therein, even though a few days after the date of the deed they found it advisable to enter into another agreement "clarifying" their positions under the deed. This we decline to do.

There is yet another reason why we think the instructed verdict was proper. As noted above, the so-called clarifying agreement dated October 4, 1962 provides that "Dallas, Texas Corporation, its successors and assigns, shall have the sole prerogative and decision as to whether such rail services are to be continued and whether the same are necessary." This language, in our opinion, gives the Dallas, Texas Corporation, its successors and assigns, the right at any time to terminate the agreement between it and Santa Fe for rail service (assuming the existence of such a contract). If that be true, Santa Fe also had the right to terminate the contract at will.

As stated in the early and oft-cited case of East Line & R. R. R. Co. v. Scott, 72 Tex. 70, 10 S.W. 99, 102 (1888) :

"It is very generally, if not uniformly, held, when the term of service is left to the discretion of either party, or the term left indefinite, or determinable by either party, that either may put an end to it at will, and so without cause."

To the same effect, see Bradshaw v. Terrell Foundry & Machine Co., 104 S.W. 509 (Tex.Civ.App., Dallas 1907, no writ) ;

Sturgeon v. City of Paris, 58 Tex.Civ. App. 102, 122 S.W. 967, 970 (Texarkana 1909, writ ref'd); Mutual Film Corp. v. Morris & Daniel, 184 S.W. 1060 (Tex.Civ. App., Fort Worth 1916, no writ). As we said in Tanenbaum Textile Co. v. Sidran, 423 S.W.2d 635, 637 (Tex.Civ.App., Dallas 1967, writ ref'd n.r.e.):

"Where a contract is silent as to the time it is to run, or provides that it is to run for an indefinite term, it is not invalid for that reason but may be terminated by either party at any time."

This is supported by the text in 17 Am. Jur.2d, Contracts, § 486, pp. 955–957, and also by Island Lake Oil Co. v. Hewitt, 244 S.W. 193 (Tex.Civ.App., Beaumont 1922, writ dism'd); Byrd v. Crazy Water Co., 140 S.W.2d 334 (Tex.Civ.App., Dallas 1940, no writ); and Kennedy v. McMullen, 39 S.W.2d 168, 174 (Tex.Civ.App., Beaumont 1931, writ ref'd).

Appellant has cited to us a great many cases holding that a contract which may be terminated by one party, or which runs for an indefinite term, is not void or unenforceable for lack of mutuality. These cases are not in point here. Santa Fe does not contend, and we have not held, that the contract to furnish rail service (if such a contract existed) was void as lacking consideration or mutuality. Our holding is simply that a contract with these characteristics may be terminated at will by either party.

■ Appellant also argues that it was a third party beneficiary of the contracts between Santa Fe and Dallas, Texas Corporation because of the use of the word "patrons" in the above quoted excerpt from the deed of September 14, 1962. We do not agree. The law presumes that parties contract for their own benefit, and a contract will not be held to have been made for the benefit of a third person unless it clearly appears that such was the intention of the contracting parties. Citizens Nat. Bank in Abilene v. Texas & P. Ry. Co., 136 Tex. 333, 150 S.W.2d 1003, 1006 (1941); Standard Acc. Ins. Co. v. Knox, 144 Tex. 296, 184 S.W.2d 612, 615 (1944); Republic Nat. Bank of Dallas v. National Bankers Life Ins. Co., 427 S.W.2d 76, 79 (Tex.Civ.App., Dallas 1968, writ ref'd n.r. e.). So, even if it could be held that Santa Fe impliedly agreed to furnish rail service to Dallas, Texas Corporation, "its successors and assigns, forever," we find in the record no evidence that it intended to bind itself thusly for the benefit of one in the position of appellant. The use of the word "patrons" in the clause in question does not change its character. It is still merely the reservation by Santa Fe of an exclusive right or option to furnish rail service, and the fact that Santa Fe reserves the right or option to furnish such service to "patrons" located in the building as well as to Dallas, Texas Corporation does not detract from the right of Santa Fe to terminate the contract and discontinue the service at will. The description of those to whom Santa Fe reserves the exclusive right to serve is no evidence of an intention on its part to obligate itself to provide such service perpetually.

■ Appellant also claims that Santa Fe's agreement to provide rail service is a covenant running with the land and therefore enforceable by the assigns of the Dallas, Texas Corporation and their lessees. We do not agree. Since Dallas, Texas Corporation's right to demand rail service, if it existed, was created in Santa Fe's conveyance of the easement, as supplemented by the agreement of October 4, 1962, rather than in Terminal Building Corporation's conveyance of the land, such right must be considered incidental to the easement rather than to the land. This conclusion is supported by the fact that the "clarification" instrument between Santa Fe and Dallas, Texas Corporation was executed on October 4, 1962, *after* the deed

of September 21, 1962 from Dallas, Texas Corporation to Ingram Brothers.

It is clear to us that the parties never intended that any right to demand rail service should be appurtenant to the land conveyed to Dallas, Texas Corporation by Terminal Building Corporation, but that whatever right Dallas, Texas Corporation had in this regard should be a personal right, which it has never assigned to anyone, so far as this record shows. All of the deeds to the Third Unit, beginning with the conveyance from Dallas, Texas Corporation to Ingram Brothers and ending with that from Cannon Craft Distributing Company to Prop, Inc., are expressly made subject to the reservation to Santa Fe of the exclusive right of serving by rail and the rights of Dallas, Texas Corporation as clarified by the agreement of October 4, 1962. The deed to appellant's lessor contains the same reservation, and the lease to appellant contains no language indicating an intent to transfer to appellant any right to demand perpetual rail service to the building it was renting. It could not very well do so since the lessor itself had no such right. Our holding in this respect finds support in Gulf C. & S. F. Ry. Co. v. Smith, 72 Tex. 122, 9 S.W. 865 (1888), and Lakewood Heights Co. v. McCuistion, 226 S.W. 1109 (Tex.Civ.App., Dallas 1920, writ ref'd).

Santa Fe presents numerous other grounds for upholding the instructed verdict in its favor, including the contention that the condemnation by the city of Dallas rendered its alleged contract to continue to furnish rail service impossible of performance. In fact, appellant's third and last point of error is that no defense of impossibility of performance was established as a matter of law. However, in view of our holdings hereinabove set forth we deem further consideration of such additional defensive matters to be unnecessary.

The judgment is affirmed.