### DANIELS *v.* BRODIE.

Decided February 14, 1891.

1. *Contract not to engage in business—Breach.*

One who has obligated himself not to engage in a mercantile business commits a breach of his contract (1) if he becomes a sole or joint proprietor in such a business, or (2) if, without engaging therein, he induces prospective customers of his obligee to so believe. In the first instance he would be liable to the obligee to the extent of his loss occasioned by the business; in the latter, to the extent of his loss occasioned by that belief among such customers.

2. *Agency—Ratification.*

An agent's unauthorized act must be ratified or repudiated *in toto.*

3. *Pleading—Absence of file mark—Presumption.*

A reply to a counter-claim which lacks the clerk's file mark will be treated on appeal as having been filed if it is copied in the transcript, and the parties at the trial have treated the allegations of the counter-claim as at issue.

APPEAL from *Jefferson* Circuit Court.

JOHN A. WILLIAMS, Judge.

On February 19, 1887, Daniels made a contract in writing with Brodie in substance as follows :

Brodie sold to Daniels a stock of general merchandise, as shown by an inventory attached, for four thousand dollars, and, for a certain rent, leased his store-house and fixtures for the term of two years. Brodie agreed " *that he will not in any manner engage in the mercantile business during said*

*term of two years*" in Jefferson county.   Daniels agreed to
pay the said sum of four thousand dollars, two years from the
date of the contract, in goods of the same class and quality
and at the same prices as set forth in said inventory, or at
his option to discount the amount of the bill at 25 per cent.
off.

On 12th March, 1889, Daniels brought this suit, alleging
that Brodie had violated the contract by becoming a partner
in the firm of Sallee & Co., in Redfield in said county; that,
during the period of the contract, that firm had made a net
profit of $3000; that plaintiff would have made this profit if
Brodie had not violated his contract.   Brodie denied that
he was a partner of Sallee & Co., and filed a counter-claim,
alleging that the amount of goods delivered to him by Dan-
iels was $1274.62 less in value than the contract called for.
A reply to this counter-claim, denying every item thereof
except $21.37, appears in the transcript, though not marked
" filed."

The testimony showed that, upon plaintiff's electing to re-
turn the amount of goods stipulated, defendant appointed
one Davis his agent to take an invoice of the goods.   In
defendant's absence the invoice was made, and Davis ac-
cepted them in his behalf.   Defendant claimed that Davis
had no authority to accept the goods, and that some of the
goods were not of the quality and class called for by the in-
ventory.   He directed Davis to return certain goods.   The
rest he sold to Sallee & Co.   Plaintiff admitted that the
invoice, as accepted by Davis, was short $177.

The court refused to give this instruction asked by plain-
tiff, viz.:

"Third.   The jury are instructed, as a matter of law, that
if a person adopts a transaction done in his behalf by an
agent who had no authority to do it, he must adopt it in its
entirety; he cannot adopt it in part and repudiate it in part.
And if the jury believe, from the evidence, that Davis ac-
cepted for Brodie the goods offered him by Daniels in
February, 1889, and that, when Brodie returned, he accepted

and received a part of the goods so taken by Davis, then this was a ratification of the act of Davis, in accepting all the goods delivered to him by Daniels, and Brodie is bound thereby."

There was verdict and judgment for Brodie for $782 91.

*N. T. White, S. M. Taylor* and *J. W. Crawford* for appellant.

1. The court erred in refusing the third prayer asked for plaintiff. A principal cannot ratify in part and repudiate in part his agent's act. Bish. on Cont., sec. 1110 and cases cited; Sackett on Instr., p. 65, sec. 10 and cases cited; Benjamin on Sales, citing 19 L. J. Ex., 410.

2. Also, in refusing the fifth and sixth. Appellee clearly violated the spirit of his contract, if not its letter. The contract clearly conveyed the " good will," and it was a breach for Brodie to hold himself out as a partner of Sallee & Co.

*M. L. Bell* and *J. M. & J. G. Taylor* for appellee.

1. No answer was filed to the counter-claim, and defendant was entitled to judgment. 25 Ark., 86.

2. Brodie was not bound by the unauthorized acts of Davis. The agent's doing more than he is authorized will not vitiate what is properly done, if the two are separable; otherwise it will. Bish. on Cont., sec. 1095. Brodie only adopted such part of the transactions of Davis as he was bound to accept under the contract.

3. The profits sought to be recovered by Daniels, under the fifth and sixth instructions, are too contingent and speculative in their nature to be considered. 7 Hill, 62; Wood's. Mayne on Dam., sec. 56; Sedgw. Dam., p. 72; 39 Ind., 260; 2 Kernan, 277.

4. The sale did not include the " good will." Bish., Cont., sec. 520. The refusal of the fifth and sixth instructions did not prejudice appellant. 50 Ark., 68 ; 3 Pars. on Cont., 179.

HEMINGWAY, J. The grounds urged for a reversal arise out of the court's refusal to charge the jury as requested by

the plaintiff. The charge given, as well as the prayers refused, relate to two different matters—the claim of the plaintiff and the counter-claim of the defendant. Without reciting in detail the rejected prayers, it is sufficient to announce our views on the questions involved.

The defendant obligated himself not in any manner to engage in the mercantile business in Jefferson county for two years. If he engaged in such business during the term specified, either as a sole trader, or as partner in the firm of Sallee & Co., he is liable to plaintiff in damages for the injury the latter sustained by reason of that business. If in fact he did not engage in such business, but did cause it to be believed among the prospective customers of plaintiff that he was a partner in that firm, this would be a breach of the contract, fairly and properly interpreted. In either case there would be a breach of the same obligation, but the extent of the injury would be different. If the defendant was the sole or a joint proprietor in such business, he would be liable to the extent of the loss occasioned to the plaintiff by that business; but if he was not such proprietor, and only caused it to be belived that he was, the plaintiff's damage would cover only the loss to him occasioned by that belief, and would not include any loss caused by the competing business, independent of that belief.

1. What is breach of contract not to engage in business.

But in our opinion there was no evidence to sustain a verdict for plaintiff in the latter state of case. The plaintiff testified that he had been damaged by the competing business of Sallee & Co., but that he knew of no loss he had sustained by reason of the fact that the defendant was understood to be a partner in that firm.

The jury found, upon proper instructions in that regard, that the defendant had not really engaged in business and as the evidence discloses no damage to plaintiff growing out of the understanding that he was a partner in the firm of Sallee & Co., there can be no reversal on account of the rejected prayers relating to the plaintiff's claim.

2. Ratifica-
tion of agent's
unauthorized
act.

Upon the issue raised by the counter-claim, the court should have given the third instruction asked by the plaintiff. One in whose name an act is done by an unauthorized agent may renounce it if he so elect. But he cannot ratify that part which makes for his interest and renounce that which makes against against it. If the defendant authorized Davis only to take an invoice of goods, he was not bound by Davis' receipt of goods in satisfaction of the plaintiff's contract; but if Davis received them for him without authority, the defendant was bound to ratify or renounce the entire act. He could not take that part of the goods that he wanted, and decline that part he did not want. The appellee concedes that such is the general rule, but contends that it does not apply in this case, for the reason, as he assigns, that the defendant was bound by this contract to accept the goods which he took from Davis, and that his acceptance of them should be referred to this obligation. This reasoning proceeds upon a false premise. The defendant was not bound to accept goods unless a stock of the value of four thousand dollars and of a particular kind was offered to him. He had no right under the contract to demand merchandise. The plaintiff had the option to discharge his obligation either by delivering a stock of goods of the stated kind and value, or by paying the stated sum of money. When he offered the stock he was entitled to demand that it be received, if it met the requirement as to kind and value ; if it did not meet that requirement, he had a right to keep all the goods and pay the sum stipulated in lieu thereof. It might be highly prejudicial to him to permit the defendant to cull the stock offered and retain such of it as he desired and return such as was undesirable. When he kept a part of the goods left for him with Davis, he deprived the plaintiff of the option to discharge his obligation either in money or in goods, and did what he was neither obliged nor authorized by his contract to do. Such retention can be referred to no right except that to ratify the act of Davis.

As to the matters involved in the counter-claim, the plaintiff was prejudiced by the court's refusal to give the third of his prayers ; but he admits and testifies that he owed the defendant on the settlement February 19, 1889, a balance of one hundred and seventy-seven dollars; and if the rejected prayer had been given, the defendant would have recovered that with interest.   If he will remit the amount of his recovery in excess of that, the court's error will be cured.

We have treated the reply to the counter-claim as filed, for two adequate reasons; in the first place, it is certified to us as a part of the record, and its unchallenged presence among the papers in the cause is evidence of its filing, although it lacks the usual indorsement by the clerk ; in the next place, the parties treated the allegations of the counter-claim as at issue in the trial below, and we will treat the pleadings here as they elected to treat them there.

3. Pleading—Presumption.

For the error indicated, the judgment will be reversed. If the defendant shall, within fifteen days, remit all of his judgment in excess of one hundred and seventy-seven dollars and interest thereon, from February 19, 1889, at the rate 6 of per cent., a judgment for that amount will be affirmed ; otherwise the cause will be remanded for a new trial.