SUNLITE CO., MANUFACTURERS, et al. v. JUSTICE. (No. 8868.)*

(Court of Civil Appeals of Texas. Dallas. Nov. 24, 1923. Rehearing Denied Jan. 5, 1924.)

1. **Bills and notes ☞469—Petition held to sufficiently allege demand.**

In action on a note, petition alleging due demand of payment *held* sufficient as against general demurrer.

2. **Appeal and error ☞930(3)—Court presumed to have found in favor of appellee as to matter not covered by special findings.**

Where no issue as to an essential fact was submitted to the jury, and none requested by either party, and the case was tried under the law governing a submission to the jury on special issues, *held* that, if there was substantial evidence tending to show such essential fact, it would be presumed in behalf of the judgment entered that the court found in favor of appellee as to such fact.

3. **Bills and notes ☞526—Evidence held to show no necessity for presentment of note to original maker.**

In action on a note, evidence of insolvency of the original maker at the time of the maturity of the note *held* to show that there was no necessity resting upon the holder for presentment of the note to the maker for payment.

4. **Bills and notes ☞526—Evidence held to show waiver of notice of dishonor.**

In action on a note, evidence that indorsers secured a temporary injunction restraining the holder from disposing of the note and so informed him, *held* sufficient evidence of repudiation of the note by the indorsers and notice thereof to the holder to excuse presentment of the note and to amount to a waiver of notice of dishonor.

5. **Principal and agent ☞23(1)—President of a joint stock association, in procuring indorsers on its note, held to have acted as agent, for the association and not as agent of the payee.**

In action on a note executed by a joint stock association, on which defendants claimed their indorsement had been procured by fraudulent representations of the president of the stock association, evidence *held* to show that the latter, in procuring the indorsements, acted as agent for the association and not as agent for the payee of the note, so that his knowledge of the fraud upon defendants could not be imputed to plaintiff payee.

6. **Bills and notes ☞494—Payee's knowledge of fraud in procuring indorsements held matter of defense to be proven by indorsers.**

In action upon a note, wherein defendant indorsers claimed their indorsement had been procured by fraudulent representations of the president of a joint stock association, the maker of the note, *held*, that the burden of proof was not upon the payee of the note to disprove his knowledge of the fraudulent acts of such president; this being an affirmative defense to be specially pleaded and proven by defendant indorsers.

7. **Trial ☞232(2)—Not ordinarily proper to charge that burden on one party or the other, where case submitted on special issues.**

In cases submitted on special issues, ordinarily it is not proper for the court to charge that the burden of proof upon any issue is upon plaintiff or upon defendant, since the jury are not to be informed whether an answer to a special issue is favorable to plaintiff or defendant.

8. **Trial ☞232(2)—Rule stated as to proper form of charge on burden of proof, in case submitted on special issues.**

In a case submitted on special issues, it is proper to charge in respect to burden of proof that "this case will be submitted to you upon special issues on questions which you will answer from the preponderance of the evidence, · that is the greater degree and weight of credible testimony before you, without reference to the effect that your answers may have upon the judgment to be rendered in this case."

Appeal from District Court, Collin County; F. E. Wilcox, Judge.

Action by T. F. Justice against the Sunlite Company, Manufacturers, and others. From judgment for plaintiff, defendants appeal. Affirmed.

Smith & Abernathy, of McKinney, for appellants.

Moore & Hardison, of Paris, and Truett & Neathery, of McKinney, for appellee.

JONES, C. J. Upon a suit filed by him in the district court of Collin county, Tex., on January 12, 1921, appellee, T. F. Justice, recovered judgment for principal, interest, and attorney fees upon a note in the principal sum of $8,980 against the Sunlite Co., Manufacturers, as principal, F. S. Laubach, G. F. Brannon, and E. W. Kirkpatrick, jointly and severally as indorsers, and against M. P. Dewar in his capacity as receiver of the said Sunlite Co., Manufacturers. Appeal was duly perfected to this court by G. F. Brannon and E. W. Kirkpatrick, who are the appellants in this case. The judgment was secured on the 28th day of March, 1922.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction February 13, 1924.

The following facts form the basis of this suit:

The Sunlite Co., Manufacturers, was transacting business under a declaration of trust, which constituted it a joint stock company. Its business was transacted from its principal office in the city of Dallas. Previous to the happening of any of the matters which culminated in the execution of the note in question, E. R. Brackett was elected president of the company and was made its manager, exercising the latter power by virtue of a power of attorney given him by the trustees or directors of the company. Appellee, Justice, was a resident of Lamar county, and had become interested in the company in the fall of 1919, and established an office in Dallas, Tex. Upon a promise made by the said Brackett, appellee was induced to invest the sum of $5,000 in the stock of the Sunlite Co., Manufacturers, and also to sell stock to certain friends of his in Lamar county. The promise made was that at the December, 1919, meeting of the trustees or directors of the company, he would be chosen a director and vice president of the company, and would have a voice in its management. The stock he sold was sold on the representation that appellee would have such voice in the affairs of the company and would to that extent be responsible for its management. Though given positive assurance that he would be placed on the board of directors or trustees in the company at said December meeting, this was not done, and appellee was not permitted to sustain any other relation to the company than that of an ordinary stockholder.

When appellee became certain that the promises made to him in reference to his being placed on the board of directors or trustees of the company and given the other official position would not be carried out, and believing that said promises were made to him only for the fraudulent purpose of securing his money and the money of his friends and associates, he demanded of the company, through its president, a return, not only of the money he had invested, but of the money he had caused to be invested by his representations as to the connection he would have with the company, tendering back his stock and the stock he had caused others to purchase through said promises made to him. He made this demand on the said company in the form of an ultimatum, to the effect that, unless it was complied with, suit would be entered against the company to compel it to receive back the stock and return to himself and said others the money that had been paid to the company in the purchase of said stock. The result of this demand by appellee on the company was an agreement that the company would refund the $5,000 paid by him, and would refund to each of those whose investment in the stock of the company had

been so secured by appellee, and they in turn would deliver their stock to the company. This agreement was perfected by the company issuing to each party to the agreement its deferred note for the amount of money he had invested therein. The aggregate amount of these notes was $11,980. The stock certificate held by each of the parties was indorsed and turned over to appellee to hold for cancellation. When these notes matured, the company was unable to discharge them, having only $3,000 which could be used for that purpose. Further negotiations were entered into, with the result that $3,000 in cash was paid, and the remainder was to be represented by the execution of a note due in six months from date, signed by the company, and to be indorsed by a sufficient number of solvent sureties to make it bankable. This latter agreement was also entered into by appellee representing himself and the other holders of the said notes and Brackett representing the company in the same capacity as on the previous agreement. It was suggested by Brackett that the defendants in the suit could be secured as indorsers of the note. Appellee took some time to investigate the financial standing of the proposed indorsers, and then informed Brackett that, if the indorsement of appellants could be secured, the note would be satisfactory. A few days afterwards he called at the office and a Mr. Scott, who then seemed to be in charge of the affairs of the company, presented to him the note forming the basis of this suit, with the indorsements of appellants Kirkpatrick and Brannon and that of E. S. Laubach and E. R. Brackett. This note and the $3,000 in cash were accepted by Justice as a settlement of the several original notes. This $3,000 was distributed by appellee to each of the holders of the other said original notes, and to himself, in proportion to the principal sum of the note held by each.

Before the execution of this note the company had agreed to move its place of business to McKinney, Tex., and had purchased for a cash consideration a tract of land from appellant Kirkpatrick for the purpose of erecting its plant thereon. Appellants apparently were very much interested in securing the location of the plant on this land; they being residents of the city of McKinney. At the time the indorsements on the note were secured from appellants, the said Brackett represented to them that the company had made a prior contract with Justice and other Lamar county holders of stock to move the plant to the city of Paris, and that they must be settled with or suit would be brought against the company to enforce this prior contract, and it would be impossible to fulfill the company's obligation to locate the plant on the piece of land near McKinney; that this note was in settlement of their claims, and, if appellants would indorse it, it would be satisfactory to these people, and the company

would be able at once to fulfill its promise in respect to locating the said plant at McKinney. Each of appellants believed this representation and was moved to indorse the said note soley because of such representation, and would not have indorsed it had such representation not been made. These representations were false, and appellee denied any knowledge that they had been made to appellants, or that their indorsements had been secured through such means. While there is some evidence in the record tending to show that he did have such knowledge, the jury in its findings sustains appellee's contention, and, as it is amply supported by evidence, this court must accept this finding and treat the case from the standpoint that the said representations made by Brackett were on his own volition and without the knowledge of appellee.

Approximately 60 days before the note matured, appellants, by suit, enjoined appellee from transferring or disposing of the note. They interviewed him in his office at the time the writ of injunction was served on him, and informed him that he had been so enjoined, and wanted to know if he still had the note in his possession. As to the allegations contained in the petition for this injunction suit, and as to any disposition of such suit, the record is silent.

Before the note matured, a receiver had been appointed for the Sunlite Co., Manufacturers, with M. P. Dewar, a defendant in the suit below, named as receiver. By order of court, all the assets of the said company had been sold out by this receiver, at which sale appellants became the purchaser. A new company had been organized under the name of the old one, with its place of business at McKinney, Tex. These receivership proceedings and the sale of the property were all had before the filing of this suit.

The case was tried to a jury, submitted on special issues, and, in response to these special issues, the jury made substantially the following findings:

(1) That E. R. Brackett represented to appellants that the Sunlite Co., Manufacturers, had an agreement and contract with T. F. Justice and other stockholders living in Paris, Tex., to move said company and its business from Dallas to Paris, Tex., and that it was necessary to dispose of their interests in order to move the company's business to McKinney, Tex., and that, unless the $8,980 note was executed and indorsed by them, the plant could not be moved to McKinney, Tex., because of said agreement.

(2) That the representations so made by Brackett to appellants were false.

(3) That appellants each relied upon said representations, and believed them to be true, and indorsed said note by reason thereof.

(4) That appellant Brannon would not have signed the name of the Sunlite Co., Manufacturers, to said note if he had known that said representations were false.

(5) That appellant Brannon believed said representations to be true and relied upon them, and was induced by reason thereof to sign the name of the Sunlite Co., Manufacturers, to said note.

(6) That appellee, neither at nor prior to the time he received the note sued on, knew that the said E. R. Brackett had made such false representations to appellants.

The suit having been dismissed as to Brackett, judgment was entered, based upon these findings of fact, against the other parties who were defendants in the trial court.

Appellants, in their motion for new trial in the court below, duly assigned all of the errors that will be here discussed, and such assignments were fully warranted by their defensive pleadings.

[1] The first assignment of error challenges the action of the trial court in overruling their general demurrer to the effect that appellee's petition did not contain sufficient allegations to state a cause of action. The delinquency in said petition is claimed to be in a failure to allege that the note was presented for payment as required by the Negotiable Instrument Law (Vernon's Ann. Civ. St. Supp. 1922, arts. 6001—1 to 6001—197) and a like failure to allege that notice of its dishonor was given to appellants, who are sued as indorsers. We believe that appellee's petition was good as against such general demurrer. The petition contains the following clause:

"That said note is now past due and unpaid, and that payment of same was duly demanded on the date of its maturity, and, being refused, due protest thereof was made, and that the plaintiff has often requested the payment of said note, but the defendants have hitherto failed and refused and still refuse to pay the same or any part thereof to plaintiff's damage in the sum of eleven thousand ($11,000) dollars."

It is fairly inferable from the above allegations that when the note became due, payment was duly demanded of each of the parties named in the suit as defendants, and that each refused to pay same. This is sufficient as against a general demurrer, and this assignment is overruled.

The second assignment of error challenges the ruling of the trial court in refusing to give appellants' requested peremptory instruction to the jury to return a verdict in their favor. It is contended that such disposition of the case in their favor should have been made, because there is no evidence in the record that the note was presented for payment on its maturity, as required by the Negotiable Instrument Law, or that notice of dishonor was given either of appellants, or that there was no necessity for said presentment and notice, or that appellants

had waived such rights allowed them under the Negotiable Instrument Law.

[2] Appellants were sued as indorsers, and, under the Negotiable Instrument Law in force at the time of the execution of this note, unless the principal in the note was insolvent and its presentation would be a mere useless act, it is necessary, in order to fix the liability of an indorser, that this presentation be made within the time required by the law to the principal in the note. It is also necessary under such law, in order to fix the liability of the indorser, that where such presentment is required to be made to the principal and he dishonors the note, notice of such dishonor within the time prescribed by said law be given to the indorsers, and a failure in any of these respects will discharge the indorser. These are the plain terms of said statute, and all rules of law or statutes existing prior to its enactment and in conflict with its terms are specifically repealed by its terms. As the undisputed evidence in this case shows that there was no presentment of the note forming the basis of this suit, and no notice of the failure of the principal to pay said note given to appellants, this assignment is well taken, unless there is substantial evidence in the record tending to show that appellants waived these requirements with reference to fixing their liability as indorser of the note. No issue of a waiver was submitted to the jury, and none requested by either party, so that, this case having been tried under the law governing a submission to the jury on special issues, if there is substantial evidence tending to show a waiver of notice of dishonor by appellants, it will be presumed, in behalf of the judgment entered, that the court found in favor of appellee as to such waiver.

[3] If the Sunlite Co., Manufacturers, was insolvent at the time of the maturity of the note, the Negotiable Instrument Law does not require that appellee should make a formal demand for payment by it, because, under such condition, he could have no reasonable expectation that such demand would be met with payment. The evidence indisputably shows that, at the time of the maturity of the note, the Sunlite Co., Manufacturers was in the hands of a receiver, and that its assets had been sold out by the receiver, and that in consequence thereof its stock was worthless. Appellants knew this condition, because at the time of and after the execution of the note they were more or less active in its management, and had actually bought in the assets of the company at the receiver's sale. In our opinion this evidence indisputably shows that there was no necessity resting upon appellee for presentment of his note to the Sunlite Co., Manufacturers, for payment, under the terms of the Negotiable Instrument Law, at the time of maturity. That there was no necessity for such presentment of the note was known to appellants at the time of the maturity of the note, when, under the Negotiable Instrument Law, such presentment should be made if formal presentment was necessary.

Appellants, however, contend that, even if appellee was excused from such formal presentment of the note to the Sunlite Co., Manufacturers, and appellants knew that no necessity existed for such presentment, still the notice of dishonor provided by the statute must nevertheless be given to them, under its exacting terms, or they would be discharged from liability as indorsers on the note, unless they waived this provision of the law, and, as there is no evidence of such waiver in the record, they were so discharged.

[4] Discussing this question from the standpoint of appellant, without passing upon the soundness of such contention, we are of the opinion that there is substantial evidence in the record tending to show a waiver of this requirement on the part of appellants. This evidence is of sufficient potency to sustain a finding, which the law presumes the trial court made when the judgment was entered, that there was such waiver. The evidence indisputably shows that some time prior to the maturity of the note appellants brought an injunction suit, and, on the filing of their petition in such suit, secured a temporary injunction restraining appellee from disposing of the note. It appears that immediately upon securing such restraining order they visited appellee in his office and informed him that he had been restrained at their instance from disposing of the note, and wanting to know if he still retained possession of the note. If this proceeding with its attendant circumstances amounted to a repudiation of the note by appellants, and a notice to appellee by them that they intended to contest their liability on the note, and occurring previous to the time when, under the law, any notice to fix their liability was required to be given by appellee, then we think certainly it is of sufficient potency to warrant the presumed finding by the trial court. That this action of appellants did amount to a repudiation of their liability on the note, it occurs to us is not open to discussion. There could have been but one purpose in filing the injunction suit, and that was to hold the note in the hands of the original payee, in order that they might present their defense based on the fraudulent acts practiced upon them by E. H. Brackett when he secured their indorsement. At least, it was notice to appellee that they believed they had some legal ground upon which, under the law, they could rely to defeat the liability they incurred as indorsers on the note, and that they intended to assert it in a court. It could only be considered by appellee as direct notice to him that payment of the note on their indorsement could only be secured when inforced by a judgment

in a court of competent jurisdiction. We therefore hold that, under the facts as disclosed by the record, the presentment of the note as provided by the Negotiable Instrument Law, in order to fix the liability of an indorser, would have been a useless formality, and therefore not necessary, and we further hold that the presumption of law that the trial court found there was a waiver of notice of dishonor by appellants is supported by substantial evidence. This assignment is overruled.

By appropriate assignments of error, appellants further challenge the action of the trial court in entering a judgment in favor of appellee, claiming that, under the findings of the jury on special issues Nos. 1 to 5, inclusive, and the undisputed evidence in the case, judgment should have been entered in their favor. These findings are to the effect that both the execution of the note and its indorsement by G. F. Brannon and E. W. Kirkpatrick were secured by fraud upon the part of Brackett. Appellants' claim as to the undisputed evidence is that it established that appellee and appellants Brannon and Kirkpatrick were partners in the unincorporated association which executed the note, and, further, that E. R. Brackett, in procuring the execution of the note and its indorsement by appellants, was acting for and on behalf of appellee, for which reason he became chargeable with knowledge of the fraud perpetrated in securing its execution and its indorsement, and, because of this, the finding of the jury on special issue No. 6, to the effect that appellee knew nothing of the fraud perpetrated by Brackett, was immaterial and must be ignored in determining the legal effect of the jury's findings.

[5] The record does not permit the conclusion of fact that Brackett was appellee's agent as stated in this assignment, and which conclusion is necessary in order that the principle of law asserted therein may find application in this case. Some time previous to the execution of this note, when Brackett was the president of the company and had the power to act, the company, through him, made the contract with appellee, Justice, severing the relations of appellee and his Lamar county associates with the Sunlite Co., Manufacturers, and taking up for cancellation their stock. The execution of this note and the securing of the indorsements of appellants on said note was one of the steps undertaken by Brackett on behalf of the company to carry out this contract. The evidence as to the circumstances under which Brackett undertook to get the indorsements on this note is to the effect that the Sunlite Co., Manufacturers, at a time when Brackett was its president, for a valuable consideration, and acting through Brackett as its president with full power to so act, had executed and delivered to appellee its promissory notes to the amount of $11,980, and,

while Brackett still had power to act, he, on behalf of said company, agreed upon a settlement of these notes by the payment of $3,000 in cash and the execution of the note forming the basis of this suit and secured the said indorsement of appellants, as one of the contract conditions of the acceptance of the note by appellee. Instead of acting for appellee in this transaction, Brackett was acting for the Sunlite Co., Manufacturers, and at no time does the evidence disclose the fact that he was acting for and on behalf of appellee. Appellee had delivered to the Sunlite Co., Manufacturers, through its president, Brackett, this demand in the form of an ultimatum, which must be performed to secure the company against a suit on these notes. To meet the demands made in this ultimatum, Brackett took upon himself, on behalf of the company, the task of securing the indorsements on the note. In no other way would the note have been accepted. As Brackett was not appellee's agent, and as appellee knew nothing of the fraud practiced upon appellants, he cannot be held responsible therefor. If either one of these facts had existed—that is, if appellee had known that the indorsements of appellants were secured by virtue of the fraud practiced, or if Brackett had been his agent to secure these indorsements, and, while acting as appellee's agent had made the false representations found by the jury, then appellee would have been charged with this fraud, regardless of whether he knew it or not. The assignments of error in reference to this issue are overruled.

Appellants assign error on the refusal of the court to instruct the jury as follows:

"You are instructed that in answering special issue No. 6, submitted to you in the charge of the court, the burden of proof is upon the plaintiff to show that he did not know of the false representations at and prior to the time he received the note sued upon, if you shall have answered in response to other special issues submitted to you that there were false representations made."

[6-8] Under the facts of this case we do not think the burden of proof was upon appellee to disprove his knowledge of the fraudulent acts of Brackett. This was an affirmative defensive matter, to be specially pleaded and proven by appellants, and we think the court would have been in error to have given the requested charge. In cases submitted on special issues, ordinarily it is not proper for the court to charge the jury that the burden of proof upon any issue is upon the plaintiff or upon the defendant, for the reason that the jury are not to be informed whether an answer to a special issue is favorable to plaintiff or defendant. In the instant case the court gave that which we consider a proper charge in respect to the burden of proof in a case submitted on special issues. That charge is as follows:

"This case will be submitted to you upon special issues on questions which you will answer from the preponderance of the evidence, that is the greater degree and weight of credible testimony before you, without reference to the effect that your answers may have upon the judgment to be rendered in this case."

Even if the burden of proof on this special issue had been as asserted by appellants, there would have been no error in refusing the charge, in view of the above-quoted clause of the court's main charge to the jury.

Finding no reversible error, the judgment is affirmed.

⊛⟲For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes