McFARLANE et al. v. FIRST NAT. BANK OF ORANGE, TEX.

No. 2770.

Court of Civil Appeals of Texas. Beaumont.
Oct. 24, 1936.

Rehearing Denied Nov. 4, 1936.

A. Milton Vance, of Houston, W. E. Lea, of Orange, and Pipkin & Pipkin and Howth, Adams & Hart, all of Beaumont, for appellants.

Williams, Lee, Sears & Kennerly, of Houston, and Alan B. Cameron, of Orange, for appellee.

O'QUINN, Justice.

This is an appeal from a judgment of the district court of Orange county. The suit was filed January 21, 1931, by the First National Bank of Orange, Tex., against A. C. McFarlane, C. W. McFarlane, W. S. McFarlane, C. H. McFarlane (known also as Harold C. McFarlane), Charles T. McFarlane (sometimes mentioned as C. T. McFarlane), Mrs. Annie Murray Smith and her husband Willard W. Smith, Mrs. Addie M. Cooke, a feme sole, Mrs. Edward Kesse (formerly Mrs. Mona Sanders) and her husband Edward Kesse, F. L. McFarlane, H. A. Burr, Lee Woodworth, the Orange Iron Works, a copartnership composed of W. S. McFarlane and C. H. McFarlane, and Sabine Oil Corporation.

The bank alleged that A. C. McFarlane was indebted to it, either as maker or indorser, on notes for $2,000, $8,242, $1,900, $3,700, $700, $8,600, and $1,600. That said C. W. McFarlane was also liable to it, either as maker or indorser, on notes for $3,700, $700, and $1,600. That Sabine Oil Corporation, the Orange Iron Works, H. A. Burr, and Lee Woodworth were also liable to it either as makers or indorsers, on the $1,600 note.

The bank further alleged that the liability of A. C. McFarlane to it was secured by a collateral note for $25,000 executed by said A. C. McFarlane, the payment of which, and all the indebtedness of said A. C. McFarlane to said bank, was secured by a certain vendor's lien note for $90,000, executed by W. S. McFarlane and C. H. McFarlane, payable to the order of C. W. McFarlane, A. C. McFarlane, C. T. McFarlane, Mrs. Addie Cooke, a feme sole, Mrs. Annie Murray Smith and her husband Willard Smith, F. L. McFarlane, and Mrs. Mona Sanders and her husband Arthur Sanders, which said $90,000 note was secured by a vendor's lien on block 7, and lot A in block 8 of the Wingate addition to the city of Orange, Tex., referred to and known as the "Iron Works property."

Plaintiff bank prayed for judgment against A. C. McFarlane for the principal sum of $25,907.29, with interest and attorney's fees; and against C. W. McFarlane, jointly and severally, with A. C. McFarlane, for $4,400, with interest and attorney's fees; and against C. W. McFarlane, H. A. Burr, Lee Woodworth, Sabine Oil Corporation, the Orange Iron Works, W. S. McFarlane, and C. H. McFarlane, jointly and severally, with A. C. McFarlane, for $1,600, with interest and attorney's fees. It also prayed judgment against the makers and indorsers of the $90,000 vendor's lien note for the principal sum of $88,000 with interest against all the defendants, costs of suit, and for foreclosure of the vendor's lien on the property described, and for general relief.

The defendants C. W. McFarlane, W. S. McFarlane, C. H. McFarlane, Charles T. McFarlane, Mrs. Annie Murray Smith, Willard W. Smith, Mrs. Addie M. Cooke, Mrs. Edward Kesse, Edward Kesse, F. L. McFarlane, H. A. Burr, and Orange Iron Works, filed answers. No answer was filed by the defendants A. C. McFarlane, Lee Woodworth, and Sabine Oil Corporation, and on February 6, 1931, an interlocutory judgment was entered against them by default to which they have not objected.

The defendant C. W. McFarlane died on April 9, 1932, and M. G. Davies, as independent executor of his will and estate, was made party defendant, and filed his answer October 6, 1932, adopting the answer theretofore filed by said C. W. McFarlane.

February 9, 1934, plaintiff First National Bank in Orange filed its first amended original petition alleging that it was the successor to the "First National Bank of Orange, Texas," having acquired the cause of action pending in the pending suit, and making substantially the same allegations as set out in the original petition.

February 12, 1934, the defendants, except A. C. McFarlane, Lee Woodworth, and Sabine Oil Corporation, against whom

judgment had been rendered, and Mrs. Rosie McFarlane, widow of C. W. McFarlane, who had theretofore made herself a party defendant, filed their second amended original answer and cross-action. In brief they pleaded: (a) General demurrer; (b) general denial; (c) that the property securing the payment of the $90,000 vendor lien note (which A. C. McFarlane had assigned to the plaintiff bank as collateral security for the payment of certain indebtedness to the bank) was the business homestead of C. W. McFarlane and his wife, Rosie McFarlane; (d) that C. W. McFarlane, A. C. McFarlane, and the Orange Iron Works were indebted to the Guaranty Bond Bank & Trust Company of Orange, Tex., in approximately the sum of $25,000, and that the sale of the Orange Iron Works property to W. S. McFarlane and C. H. McFarlane, and the taking of the $90,000 vendor's lien note by the vendors therefor, was a pretended transaction for the purpose of placing said property beyond the reach of the Guaranty Bond Bank & Trust Company; (e) that the purported deed conveying said property to W. S. Farlane and C. H. McFarlane was never delivered; (f) that no consideration for said property was ever paid to the grantors in said deed; (g) that the grantees in said deed never took possession of said property under said deed; (h) that the $90,000 vendor's lien note was indorsed by the payees thereof, so that a purported hypothecation of said note with some unknown person could be made until the protection of said property had been accomplished; (i) that A. C. McFarlane, to whom said note had been indorsed, without the knowledge or consent of the other indorsers of said note, pledged said note with the First National Bank of Orange to secure his pre-existing indebtedness to said bank; (j) that said bank took said note with the full understanding that it was not to be sued upon or the vendor's lien securing its payment foreclosed; (k) that said bank knew the infirmities· in said note at the time it received same from said A. C. McFarlane; (1) that said bank was not a holder of said note in due course; (m) that said bank paid no consideration or value for said note; (n) under oath denied that the Orange Iron Works was a partnership composed of W. S. McFarlane and C. H. McFarlane, and alleged that said Orange Iron Works was a trade-name under which C. W. McFarlane carried on his business; and (o) that W. S. McFarlane and C. H. McFarlane received no consideration for the execution of the $90,000 note. Their cross-action alleged, substantially, the same matters as set up in their amended answer above mentioned.

The plaintiff bank replied to the answer and cross-action of defendants by supplemental petition. Its demurrers and exceptions were overruled, and the cause tried to a jury upon special issues, in answer to which the jury found: (a) That the deed of date January 4, 1927 (conveying the property for which the $90,000 vendor's lien note was given) was not a pretended sale; (b) that at the time the First National Bank of Orange, Tex., acquired the $90,000 note, an installment of payment on same was due and unpaid; (c) that the property conveyed by deed of January 4, 1927, was not the business homestead of C. W. McFarlane (a grantor in the deed); (d) that the deed of January 4, 1927 (conveying the property for which the $90,000 vendor's lien note was executed) was delivered to the grantees, C. H. McFarlane and W. S. McFarlane, with the intention to pass and vest title to said grantees in and to said property; (e) that a consideration passed to C. H. McFarlane and W. S. McFarlane for the execution of the $90,000 vendor lien note in payment for the property conveyed; and (f) that the grantors in the deed of January 4, 1927, conveying the property to C. H. McFarlane and W. S. McFarlane, received a consideration for the execution of said deed.

On the verdict of the jury, judgment in favor of the plaintiff bank, appellee, was rendered against A. C. McFarlane for $35,-486.60, and against A. C. Farlane and M. G. Davies, independent executor of the will of C. W. McFarlane, jointly and severally, for $6,660.44, and against Sabine Oil Corporation, the Orange Iron Works, a co-partnership composed of W. S. McFarlane and C. H. McFarlane, and also against A. C. McFarlane, H. A. Burr, Lee Woodworth, and M. G. Davies, independent executor of the will of C. W. McFarlane, deceased, jointly and severally, for $2,267.-05, with 8 per cent. interest on said sums from the date of the judgment, together with costs of suit. Judgment was also rendered in favor of plaintiff bank, appellee, against M. G. Davies, independent executor of the will of C. W. McFarlane, C. T. McFarlane, Mrs. Addie Cooke, Mrs. Annie Murray Smith, Willard W. Smith, F. L. McFarlane, Mrs. Edward Kesse, W. S.

McFarlane, and C. H. McFarlane, jointly and severally, for $155,740.38, with 8 per cent. interest from the date of the judgment, with foreclosure of the vendor's lien on the Iron Works property (the property mentioned in the deed January 4, 1927, conveying said property to W. S. and C. H. McFarlane and for which they executed the $90,000 note retaining the vendor's lien on said property to secure the payment of said note) with provision that the proceeds of sale of said Iron Works property be applied in satisfaction of appellee's judgment against said A. C. Farlane. Motion for a new trial was overruled. The case is before us on appeal from said judgment by all of the defendants below, except A. C. McFarlane, Lee Woodworth, and Sabine Oil Corporation, who did not answer and who have made no objection to the judgment.

Appellants' first assignment of error asserts that as appellee's pleadings showed that it sought judgment against C. W. McFarlane, A. C. McFarlane, C. T. McFarlane, Mrs. Annie Murray Smith, Willard Smith, and F. L. McFarlane as indorsers of the $90,000 vendor's lien note, it was necessary for it to plead the due presentment for payment of said note, and notice of dishonor of same, or waiver of presentment and notice, and to show by its pleading that it had taken all necessary steps to fix liability of said indorsers, and not having so pleaded, the court erred in entering judgment against said indorsers upon said note.

▪ The assignment is overruled. The $90,000 note was payable in monthly installments of $1,000, and appellee alleged that only two of such installments had been paid and that said note and the balance thereon amounting to $88,000 and interest was long past due and unpaid, and although it had demanded payment of W. S. McFarlane and C. H. McFarlane (the makers of the note) and of C. W. McFarlane, M. G. Davies, independent executor of the last will and testament of C. W. McFarlane, deceased, A. C. McFarlane, C. T. McFarlane, Mrs. Annie Murray Smith, Willard Smith, Mrs. Addie Cooke, Mrs. Mona Sanders, and F. L. McFarlane (indorsers of said note), and each of them, that they and each of them had failed and refused to pay same or any part thereof, and prayed for judgment against all of said parties for said sum of $88,000, with interest thereon, and for foreclosure of its said vendor's lien. While appellants' answer contained

a general demurrer, it does not appear that it was ever presented to the court or that any ruling on same was made or requested. But if same had been urged in relation to the matter assigned, it would not be well taken, for the allegations above mentioned were good as against a general demurrer. Sunlite Co.; Manufacturers, v. Justice (Tex.Civ.App.) 257 S.W. 579, 581. Appellants did not specially except to the sufficiency of appellee's petition in this regard, nor did they on the trial complain that appellee had failed to plead presentment for payment, notice, protest, or waiver, nor was such complaint made in the motion for a new trial, but appears in appellants' brief for the first time, and is presented as fundamental error. The petition being good as against a general demurrer, and no special exceptions having been made to the pleading as to the matter complained, fundamental error as to the sufficiency of the petition is not applicable.

▪ Furthermore, A. C. McFarlane, on May 24, 1927, executed and delivered to appellee bank his note for $25,000 as collateral security for the payment of certain indebtedness owed by him to said bank, and in said note recited that as security for the payment of said $25,000 note, as well as any other indebtedness by him to said bank, he then and there assigned, pledged, and delivered to said bank the note for $90,000 and the vendor's lien securing same, it having been assigned and conveyed to him, the said A. C. McFarlane, by appellants (naming them), and reciting the note. The assignment of the $90,000 note and lien to A. C. McFarlane by appellants was in writing, dated ――― day of May, 1927, and contained this statement: "This conveyance, however, is not to affect, in any manner, our liability as indorsers on the back of said note, and we hereby guarantee the payment of principal and interest of said note or any extension or renewal thereof, hereby waiving protest, diligence and suit on same." This was signed by each of the appellants. The various notes and assignments were in evidence without objections. It appears to us that the question of waiver was not only raised but amply shown. In any event, had appellants made any objection in the trial court to the evidence showing waiver of presentment, demand, and notice of dishonor, because not specifically pleaded, appellee could have amended its pleading; but, as before stated, appellants neither specially excepted to the sufficiency of the

petition in this particular, nor made objection to the evidence when offered, nor assigned error in their motion for a new trial, but have raised the question here for the first time. Under these facts we think appellants should not now be heard to complain. Murphy v. Stell, 43 Tex. 123. Further, we think it clearly appears from the record that the case was tried in the lower court upon the theory that all necessary averments for appellee to recover had been pleaded, and were put in issue by the evidence, and that the testimony was introduced and the charge submitting the case to the jury given on that theory, without objections by appellants; hence the sufficiency of the pleadings should not be questioned, but on appeal must abide the theories adopted by them in the trial court. Kansas & A. V. Ry. Co. v. Dye (C.C.A.) 70 F. 24; Daniels v. Brodie, 54 Ark. 216, 15 S.W. 467, 11 L.R.A. 81; Coleman National Bank v. McDonald (Tex.Civ.App.) 286 S.W. 487. However, if it could be said that the matter complained was error under the pleadings and facts, appellants could not have been misled or prejudiced, wherefore the error was harmless.

Assignments 2 and 7 challenge the finding of the jury that the sale of the property known as the Orange Iron Works was not a pretended sale, but was an actual sale in good faith, because, they say, such finding was contrary to the undisputed evidence, and against the overwhelming weight and preponderance of the evidence. This contention is based wholly upon the testimony of several of the appellants that the transaction (conveyance of the property described in the deed of January 4, 1927, and the execution of the vendor's lien note for $90,000 given in payment therefor) was a pretended sale of the property to W. S. and C. H. McFarlane for the purpose of hindering and defrauding an existing creditor of C. W. McFarlane, one of the grantors in the deed of conveyance, to wit, the Guaranty Bond Bank & Trust Company of Orange, Tex., said bank being a state bank organized and doing business under the laws of the state of Texas, and said C. W. McFarlane at said time being the principal bondsman on the guaranty bond of said bank, and the bank then being in a failing condition, the property was conveyed for the purpose of placing it beyond the reach of any judgment and execution which the banking commissioner of Texas might obtain against the bondsmen on said guaranty bond. A careful examination of the record

reveals much evidence controverting this contention, amply sufficient, we think, to support the jury's finding. The deed was a regular warranty deed executed by appellants January 4, 1927, conveying the property to W. S. McFarlane and Harold C. (C. H.) McFarlane, duly acknowledged by the grantors on same date and placed of record May 11, 1927. The $90,000 vendor's lien note referred to in the deed was executed by W. S. and C. H. McFarlane in consideration for the property, payable to the order of the grantors, including all of the appellants, which note recited that it was given in payment for said property. It was indorsed by all of the payees, and so indorsed was by them assigned in writing to A. C. McFarlane; said assignment being duly acknowledged. This assignment was dated the ———— day of May, 1927, and the acknowledgments thereto made May 12, 1927, and filed for record May 24, 1927. On said date, May 24, 1927, A. C. McFarlane indorsed on said note the following: "Pay to the order of the First National Bank, Orange, Texas, A. C. McFarlane," and on said date in writing assigned and transferred said note and lien to said First National Bank as collateral security for his certain indebtedness to the bank, which transfer and assignment was recorded July 16, 1927.

C. H. McFarlane, one of the vendees of the property, testified that "he knew about the purchase of the Orange Iron Works— that it was sold to him and W. S. McFarlane about January 1, 1927, in consideration for which they gave a note for $90,000.00." That he and W. S. McFarlane, the other vendee, after January 4, 1927, the date of the deed conveying the property to them, as owners operated the property up to and until the instant suit was filed. W. S. McFarlane testified that after the deed conveying the property to them, he and C. H. McFarlane had authority to and did sign checks for and in behalf of the Orange Iron Works, and that they executed notes for money loaned the Orange Iron Works, which they had not done prior to the deed. Before January 4, 1927, the date of the deed to W. S. and C. H. McFarlane, C. W. McFarlane owned and operated the property under the name Orange Iron Works, and signed checks in payment of its obligations as "proprietor," while after said date he signed as "manager." There was in evidence a signature card signed by W. S. and C. H. McFarlane authorizing C. W. McFarlane to sign checks as "manager."

A certified copy of the balance sheet showing the financial condition of the Orange Iron Works, dated December 31, 1927, was signed, "C. H. McFarlane, partner."

T. W. Ford testified by deposition that on May 24, 1928, he was bookkeeper for Orange Iron Works, a partnership composed of W. S. and C. H. McFarlane. He identified a financial statement made by the Orange Iron Works to R. G. Dunn & Co., dated May 24, 1928. It purported to show that W. S. and C. H. McFarlane were partners and succeeded C. W. McFarlane as owners of said property.

C. W. McFarlane, in a sworn financial statement made to Jas. Shaw, state banking commissioner, dated June 5, 1926, showing his resources and liabilities, listed among his resources the real estate, buildings, machinery, equipment, etc., composing the Orange Iron Works. This was only a few months prior to the sale of the property on January 4, 1927. In another financial statement made to Jas. Shaw, banking commissioner, sworn to on January 27, 1928, he failed to list among his resources any property that might in any way be identified as any portion of the Orange Iron Works property. This, it will be noticed, was one year after the sale of said property by the deed of January 4, 1927. Under oath he listed the property as belonging to him shortly before the deed, and under oath he omits the property from his ownings shortly after the deed.

On May 25, 1927, the Guaranty Bond Bank & Trust Company of Orange closed its doors and placed its affairs in the hands of the state banking commissioner. On July 13, 1927, the banking commissioner, as receiver of said bank, filed suit in the district court of Orange county against the Orange Iron Works, C. W. McFarlane, A. C. McFarlane, C. T. McFarlane, Mrs. Annie Murray Smith, Willard Smith, Mrs. Addie Cooke, F. L. McFarlane, Mrs. Mona Sanders, Arthur Sanders, W. S. McFarlane, and Harold C. (C. H.) McFarlane, on certain notes executed by the Orange Iron Works and purported to have been signed by C. W. McFarlane, owner, and in which suit it was alleged that the "Orange Iron Works" was a trade-name under which at the date of the execution of the notes sued on the defendants, except W. S. McFarlane and Harold C. (C. H.) McFarlane, conducted their said business, and that at the time of the filing of the suit (July 13, 1927) said W. S. and C. H. McFarlane were conducting said business claiming to be the owners thereof. In answer to this suit the defendants thereto, being the same parties who are appellants herein, on October 25, 1927, filed their sworn answer and alleged that said defendants, with the exception of W. S. and Harold C. (C. H.) McFarlane, were not on February 15, 1927, and March 14, 1927 (the date of the execution of the notes sued on), nor had been for over a year prior thereto, partners operating under the trade-name of Orange Iron Works; that on said dates, February 15, 1927, and March 14, 1927, C. W. McFarlane was not the owner of said Orange Iron Works, and had not been for more than a year prior to the execution of said notes either the owner of or a partner in said Orange Iron Works; that defendants W. S. and Harold C. (C. H.) McFarlane had owned and operated said Orange Iron Works as a partnership under the trade-name the "Orange Iron Works" for more than a year prior to the execution of said notes, and that said C. W. McFarlane had no authority on the dates of the execution of said notes to sign same as owner of the Orange Iron Works. The suit of the banking commissioner was to the court without a jury, and judgment was rendered in accordance with said sworn pleadings. Without further reference to the evidence, we hold that there was ample evidence to sustain the jury's finding that the sale of the property by the deed of January 4, 1927, was not a pretended sale. The assignments are overruled.

We overrule appellants' assignment that the jury's finding that W. S. McFarlane and C. H. McFarlane received a consideration for the execution of the $90,000 vendor's lien note was without support in the evidence. The assignment is based upon the contention that the note was executed as a part of an illegal transaction—a pretended sale of the property involved to hinder and defraud the creditors of C. W. McFarlane—hence the note was without consideration and subject to such defense. It is sufficient to say that the jury having found that the sale of the property was an actual bona fide sale, in consideration for which the note was executed, and the evidence fully supporting said finding, then title to the property passed to said W. S. and C. H. McFarlane, and was the consideration for the execution by them of said note.

The jury found in answer to special issue No. 4 that the property described in the deed of January 4, 1927, block No. 7, and

760

lot A in block 8, of the Wingate addition to the city of Orange, Tex. (exclusive of that portion of same occupied by the laundry building and exclusive of what was denominated as "A. C. McFarlane's office and the Mitchell residence lot"), which was used by C. W. McFarlane on January 4, 1927, for business purposes, was not on said date the business homestead of C. W. McFarlane. The property inquired about was what is herein denominated the "Orange Iron Works." The jury's finding was that at said date, January 4, 1927, said property was not the business homestead of C. W. McFarlane. Appellants urge several assignments against this finding that it is without support in the evidence.

The record reveals that for thirty-five or more years, and up to the time of his death, C. W. McFarlane lived with his family on the corner of Seventh and Front streets in the city of Orange, Tex., which property he owned and claimed as his homestead. This property constituted no part of the block on which the Orange Iron Works was situated. For many years C. W. McFarlane owned and operated the Orange Iron Works situated as described in the deed of January 4, 1927, conveying same to W. S. and C. H. McFarlane. On August 23, 1904, C. W. McFarlane executed a deed of trust to Geo. W. Bancroft covering all or portions of said property to secure the payment of a note of said date in the sum of $2,000, executed by said C. W. McFarlane, payable to A. J. Bancroft, in which deed of trust he declared *"that the property hereinbefore mentioned and conveyed to said party of the second part, forms no part of any property by him owned, used or claimed as exempted from forced sale under the laws of the state of Texas, and disclaims and renounces all and every claim thereto under any law or laws, and hereby designates the following property, to-wit: S. half (½) Block (11) Eleven Amended Sheldon Survey in the town of Orange, Texas, and fronting 300 feet on Front Street as his homestead, and as constituting all the property (of similar nature to that herein conveyed) owned, used or claimed by him as exempt under said laws."* The instrument was duly acknowledged and placed of record. The property designated as his homestead was that upon which he and his family resided.

On December 22, 1905, C. A. McFarlane executed another deed of trust to W. H. Stark covering all or portions of the prop-

erty in question to secure the payment of a note of said date in the sum of $7,169.55, executed by said C. W. McFarlane, payable to Lutcher & Moore Lumber Company, in which said deed of trust the same declaration as to homestead claims and renunciation was included as above set out; that is, that no part of the property covered by the deed of trust formed any part of any property owned, used, or claimed by him as exempt from forced sale, and again designated his family home as all of the property claimed by him as exempt.

On January 1, 1912, C. W. McFarlane executed another deed of trust to W. H. Stark covering all or portions of the property in question, to secure the payment of a note of said date in the sum of $7,000, executed by said C. W. McFarlane and payable to Lutcher & Moore Lumber Company, in which he again declared that the property covered by the deed of trust formed no part of any property owned, used, or claimed by him as exempt, and renounced all and every claim thereto as exempt under any or all laws, and again designated his residence homestead as all property claimed by him exempt from forced sale.

On June 5, 1926, C. W. McFarlane, in a sworn financial statement made to Jas. Shaw, banking commissioner of Texas, for the purpose of qualifying as a bondsman for the Guaranty Bond Bank & Trust Company of Orange, Tex., listed the real estate, etc., composing the Orange Iron Works, as resources owned by him and subject to execution. In this sworn statement he listed his homesite separately and apart from his Iron Works plant site and buildings and equipment on same.

It appears that C. W. McFarlane, while long engaged in the activities of the foundry business carried on by him at the Orange Iron Works, still he was also engaged in the banking business and also, more or less, in the oil business. Though it is abundantly shown that for many years C. W. McFarlane used the Iron Works property as a place to exercise his trade of iron worker, yet after a careful examination of the record, we fail to find any evidence that he ever claimed or designated block 7 and lot A in block 8 of the Wingate addition to the city of Orange, known as the Orange Iron Works property or any portion of same, as his homestead. A claim to property and its use as such is necessary to give homestead rights in same. Neither use without claim or claim without use will

761

confer the right. They must both concur. In the case at bar the evidence shows long use of the property as a place to exercise his calling as a foundry man, but repeated acts deliberately done by the owner, C. W. McFarlane, show that such acts of user were not accompanied by a claim of the property as exempt under the homestead law. His declarations in the several deeds of trust above mentioned, and his sworn financial statement made to the banking commissioner, are direct and positive proof that it was not his intention to claim and that he was not making any claim to the property as exempt from forced sale under any law, but to the contrary he renounced such claim and said that it was property belonging to him subject to forced sale, free from any claim by him that the property was any part of his homestead. The question of homestead was, under full and appropriate instructions, submitted to the jury, and they found against appellants' contention, and we think this finding has support in the evidence. The assignments are overruled.

 By several assignments of error and also as fundamental error, it is urged that the judgment foreclosing the vendor's lien on the Iron Works property was error because the children of said C. W. McFarlane by his second wife, Rosie McFarlane, were not parties to the suit. C. W. McFarlane was married twice. By his first wife, he had the following children: A. C. McFarlane, Charles T. McFarlane, Mrs. Addie M. Cooke, Mrs. Annie Murray Smith, Mrs. Mona Kesse, F. L. McFarlane, and W. S. McFarlane. They were all parties to the suit. He was married to his second wife, Mrs. Rosie McFarlane, in 1906, by whom he had five children. None of them were parties. The property in question, known as the Iron Works property, was acquired during the lifetime of his first wife, and therefore was community property. At his first wife's death one-half of the property descended to the children above named. As stated, they were all parties to the suit. They also all joined with their father, C. W. McFarlane, in the deed of January 4, 1927, conveying the property to W. S. and C. H. McFarlane. After the death of C. W. McFarlane April 9, 1932, M. G. Davies, independent executor of the will and estate of C. W. McFarlane, deceased, was made a defendant, and filed his answer. Appellants, in their answers, did not allege that C. W. McFarlane died intestate, or that his children by his second wife, Rosie McFarlane, were

either heirs at law, or devisees under his will, nor did appellants suggest in the trial court that said children were necessary or proper parties to the suit. Under any phase of the facts of this case, the children of deceased by his second wife were not necessary parties to the foreclosure suit, and the court did not err in rendering judgment foreclosing the lien. Howard v. Johnson, 69 Tex. 655, 7 S.W. 522. The assignments are overruled.

Several other assignments of error are urged; but as this opinion has already grown quite long, we will not discuss them, but will say that all of them have been considered, and none of them show error, and are all overruled.

The judgment is affirmed.